UNITED STATES of America,
Plaintiff–Appellee/Cross–Appellant,

v.

William V. WHITE,
Defendant–Appellant/Cross–Appellee.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael Albert ROE,
Defendant–Appellant.

Nos. 89–1313, 89–1487.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 18, 1989.

Decided Oct. 25, 1989.

Thomas M. Durkin, David Glockner, Asst. U.S. Attys., Office of the U.S. Atty., Chicago, Ill., and John Vandreuil, Asst. U.S. Atty., Office of the U.S. Atty., Madison, Wis., for the U.S., plaintiff-appellee.

Allan A. Ackerman and Louis B. Garippo, Susan F. Feibus, and Thomas A. Moore, Chicago, Ill., for William V. White, defendant-appellant.

Charles W. Giesen, Morris D. Berman, Giesen & Berman, Madison, Wis., and Allan A. Ackerman, Chicago, Ill., for Michael Roe, defendant-appellant.

Before CUMMINGS, CUDAHY and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Two unrelated criminal cases present a common question concerning the application of the Sentencing Guidelines: whether drugs that were not part of the offense of which the defendant was convicted must be included in the amount used to compute the base offense score. The Ninth Circuit has held that only quantities entailed in counts of which the defendant has been convicted

may be used. *United States v. Restrepo*, 883 F.2d 781 (9th Cir.1989). Five other courts have held that all quantities that "were part of the same course of conduct or common scheme or plan as the offense of conviction" must be added together as a result of Guidelines § 1B1.3(a)(2). E.g., *United States v. Williams*, 880 F.2d 804 (4th Cir.1989); *United States v. Taplette*, 872 F.2d 101 (5th Cir.1989); *United States v. Ykema*, 887 F.2d 697, 699 (6th Cir.1989); *United States v. Allen*, 886 F.2d 143 (8th Cir.1989); *United States v. Scroggins*, 880 F.2d 1204 (11th Cir.1989). We agree with these decisions and disagree with the Ninth Circuit.

# I

## A

Customs officials intercepted two packages from Peru addressed to William White and found that each contained magazines hollowed out and filled with cocaine base, a substance that can be smoked or converted into cocaine hydrochloride, the powdery form in which cocaine usually is taken. They turned the packages over to the Drug Enforcement Administration, which removed 300 grams of the cocaine base and left two grams in one of the packages, adding sugar to make up bulk and a transmitter to signal the opening of the package. Maintaining watch after dropping one package in White's post office box, agents saw him pick it up and make a beeline for a storage locker that was later found to contain a substantial quantity of mannitol, a laxative often used to cut (dilute) cocaine and provide bulk. White then went about his business, leaving the package, unopened, in his car. Agents arrested him as he was on his way to play tennis early in the evening. The car contained not only the package and tennis gear but also a loaded semi-automatic pistol in the tray between the front seats.

An indictment charged White with conspiring to possess cocaine with intent to distribute, with possessing 157 grams of cocaine base (the amount originally in the delivered package) with intent to manufacture and distribute it, and with using a firearm in relation to a drug offense. After a bench trial, the district judge convicted White of the count charging possession with intent to manufacture and distribute but acquitted him of the counts charging conspiracy and possession of a gun in relation to a drug offense. The judge said that the prosecution had not demonstrated that White conspired with anyone in particular, and that White had not used the gun "to facilitate the commission of these offenses".

The base offense score under the Sentencing Guidelines depends on the quantity of drugs involved in the offense. Quantity could have been derived in three ways here: the 1.88 grams of cocaine base in the package placed in White's box, translating to a level of 18; the 157 grams that had been in the package when it arrived at the border, translating to a level of 34; and the 302 grams that had been in both packages, yielding the same level of 34 (everything from 150 to 499 grams of cocaine base is in that category, along with 15–49.9 kilograms of cocaine hydrochloride). White maintained that level 18 is proper while the prosecution argued for level 34.

The district judge found that the amount of cocaine White possessed with intent to distribute was 1.88 grams. White never got control of any other quantity and therefore could not have possessed it, even constructively. Although the prosecutor argued that the whole 302 grams should be included because the two packages were part of a single course of conduct, the judge disagreed, stating:

I, in being a rather jealous guardian of my function and role, asked the rhetorical question. Why did I make specific findings of fact if some bureaucratic computation is going to throw them out the window? And I asked [the probation officer] to recompute the offense level based upon 1.88 grams, the amount [White] was found to be in possession of, and without a gun, ... because I found it very difficult to see that he should be punished for even more than he was

charged with let alone about found guilty of. . . .

Without discussing the language of the Sentencing Guidelines, the judge then sentenced White to 33 months' imprisonment, the upper limit of the 27–33 month range prescribed for a base offense level of 18. The range for a base offense level of 34 is 151–188 months; if the level had been set at 36 because of the gun (as the prosecutor requested, see Guidelines § 2D1.1(b)(1)), the range would have been 188–235 months.

■ White's appeal challenges the conviction. The United States, appealing on the authority of 18 U.S.C. § 3742(b)(2), asks us to instruct the district judge to resentence White on the basis of an offense level of 34. Part II takes up the government's appeal. White submits that the evidence was insufficient to support the conviction. He didn't open the package and, he says, had no idea that cocaine base was hidden in a hollowed-out magazine to which he subscribed. The prosecution replies that producers do not send 300 grams of cocaine base—which the Guidelines treat as equivalent to 30 kilograms of cocaine—to randomly selected names on magazine subscription lists. White traveled to Peru frequently, the prosecution established, though he says the trips were innocent and concerned unspecified "mining interests". On receiving the package, White visited a storage locker containing 20 pounds of mannitol, used as a laxative or a cutting agent; White does not suffer constipation of that severity, leaving the sinister inference. Cocaine base is processed before consumption; this requires ether and hydrochloric acid. White and his brother had purchased these chemicals in quantity, under assumed names, a few years earlier. Witnesses reported smelling the fumes of these chemicals from what may have been a processing operation under White's control. Although this evidence affords only circumstantial proof that White knew the contents of the envelope from Peru, it is sufficient to support the inference the district judge drew.

■ If so, White contends, this shows only that the evidence concerning the purchases and use of ether and hydrochloric acid should not have been admitted in evidence. Such bad-act evidence may not be admitted to show character, Fed.R.Evid. 404(b), which is how the prosecution used it here, White believes. See *United States v. Beasley*, 809 F.2d 1273 (7th Cir.1987). The district court believed, however, that the evidence had been used to show White's knowledge of the contents of the packages, a permissible use. Because the judge as trier of fact was in the ideal position to know the purpose for which the evidence was used, we are most reluctant to say that he abused his discretion in admitting it. Ether and hydrochloric acid are not contraband or even regulated; neither is having an open window through which a fan blows their fumes. Yet such deeds may reflect on a person's knowledge about the contents of a package that is useful only to those who can get (and know what to do with) ether and hydrochloric acid. Judge Marovich was entitled to use the evidence as he did. *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

B

An indictment charged Michael Roe with three drug offenses. Count I alleged that during January to May 1986 Roe was a member of a conspiracy transporting cocaine from Florida to Wisconsin; Roe twice served as courier, for which he received small quantities of the drug. Count II charged that on May 18, 1988, Roe sold one ounce of cocaine. Count III charged that on June 30, 1988, Roe used the telephone to plan a sale of cocaine (the deal fell through).

Roe and the prosecutor signed an agreement under which Roe would plead guilty to Count II and cooperate with the prosecution of other cases; the United States Attorney pledged to dismiss the other counts. This agreement stated: "The cocaine involved in Count II weighed 27.778 grams. The United States and the defendant stipulate and agree that the charges in Counts I

and III will not be included in the sentencing guidelines computation."

The parties presented this agreement to Chief Judge Crabb, who deferred accepting it until receiving the presentence report. After reading the report, she informed Roe that the Guidelines did not permit a stipulation excluding consideration of related illegal acts. See *Ykema*, 887 F.2d at 699. She therefore accepted the plea "conditionally"—equivalent to rejecting the proposed plea agreement, see Fed.R.Crim.P. 11(e)(4), while accepting the plea—explained how she proposed to compute the sentence and its anticipated total (33 months), and told Roe that he could withdraw his plea and proceed to trial. After considering the subject overnight, Roe reiterated his plea of guilty to Count II, this time without benefit of the stipulation.

Chief Judge Crabb then imposed sentence. She added the one ounce on Count II, the four ounces Roe had discussed selling (the basis of Count III), and the portions of the amounts in the Count I conspiracy that she deemed "fairly attributable" to Roe—apparently the amount he carried, which counsel said was less than two pounds. This yielded a total between 0.5 and 1.9 kilograms, with a base offense score of 26 and a sentencing range of 63–78 months. Judge Crabb granted Roe a two-level reduction for accepting responsibility, Guidelines § 3E1.1(a), and an additional two-level reduction for his minor role in the Count I conspiracy, § 3B1.2(b). This produced an adjusted offense level of 22, from which the judge departed downward by two more levels because of Roe's substantial cooperation with the prosecution. Level 20 meant a range of 33–41 months, and the judge imposed a sentence of 33 months, the bottom of the range. Had the court considered only the 28 grams covered by Count II, the base offense score would have been 14 and the sentencing range 15–21 months. In explaining why she included amounts attributable to Counts I and III, the judge did not quote or analyze the language of the Guidelines. She said, however, that inclusion "was the appropriate view of the total offense behavior."

## C

These and other Sentencing Guideline cases require a close analysis of the evidence presented to the district court and the reasons the judge gives in support of the sentence. Every sentence under the Guidelines must be supported by reasons. "The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence". 18 U.S.C. § 3553(c). "Reasons" means something more than conclusions—a distinction important not only to the defendant whose future is at stake but also to the appellate process, for once the judge passes on contested issues of fact, and application of law to fact, our review is deferential. 18 U.S.C. § 3742(e), as amended and renumbered by the Anti–Drug Abuse Act of 1988, Pub.L. 100–690; *United States v. Wright*, 873 F.2d 437, 443–44 (1st Cir.1989) (Breyer, J.); *United States v. Mejia–Orosco*, 868 F.2d 807 (5th Cir.1989).

The dominant role of the sentencing judge's findings and reasons means that we need ready access to them. Seventh Circuit Rule 30(a) requires the appellant to "submit, bound with the main brief, an appendix containing the judgment under review and any opinion, memorandum of decision, findings of fact and conclusions of law, *or oral statement of reasons delivered by the trial court* ... upon the rendering of that judgment" (emphasis added). Rule 30(a) thus requires counsel to attach to the brief the "reasons" that § 3553(c) obliges the judge to state, together with any findings of fact and conclusions of law that support these reasons.

Circuit Rule 30(c) requires counsel for any appellant to certify that the brief contains the materials specified in Circuit Rule 30(a). Although counsel for White and Roe made the necessary certificate, neither brief contains the judge's statement of reasons for the selection of sentence. The United States, which filed a brief as appellant when challenging White's sentence, did not even make the required certificate; the Clerk's Office should have rejected this brief. Being an appellee on one aspect of

the case (as the United States is on White's appeal) does not eliminate the need to perform an appellant's duties. The deficiencies in these two cases are not unusual; fewer than half of the appellants in recent cases under the Guidelines have furnished the materials for which Rule 30(a) calls.

▇▇▇ Because none of the three appellants supplied the district judges' statements of reasons, either attached to the brief or in a separate appendix, we scrounged the record for them independently. We hope we have found them all. Because sentencing proceedings may be lengthy and spread over several appearances (as Roe's was), counsel's aid in collecting the district court's reasons is especially important. (It would help, too, if district judges marshall their findings and reasons in sentencing cases in the same way they do when making oral findings and conclusions under Fed.R.Civ.P. 52(a).) Briefs *must* contain these statements of reasons. Although we understand the difficulties counsel face if the district judges' explanations are scattered through transcript, this is no excuse for failure even to try to present the necessary materials. False certificates and missing explanations are adequate reasons summarily to affirm the judgments without attempting to reconstruct the missing materials. See *Teitelbaum v. Curtis Publishing Co.*, 314 F.2d 94 (7th Cir.1963); *Sparrow v. Yellow Cab Co.*, 273 F.2d 1 (7th Cir.1959).

## II

### A

▇▇ Before the Guidelines, judges routinely took related bad acts into account when imposing sentence. Practices differed from judge to judge, however, and the Sentencing Commission tried to provide standards for considering such circumstances as part of the program of uniform sentences for similar conduct. Although it is simple to tell the judge to consider all conduct for which the defendant has been convicted, it is harder to determine how convictions should be combined (is one sale of 2 kilograms of cocaine to be treated the same as two sales of a kilogram each? twice as severely as two sales of 500 grams?), and harder still to decide how to treat conduct of which the defendant was not convicted. If the Guidelines require the court to take all criminal activity into account—a program of "real offense sentencing"—it may be necessary to engage in extensive fact-finding, an inquisition into the defendant's life, even though the charge is simple. If on the other hand the Guidelines require the court to consider only the precise activity of which the defendant stands convicted—a program of "charge offense sentencing"—identically situated persons will receive very different sentences depending on the prosecutor's decisions.

The Sentencing Commission struck a compromise. See Policy Statement 4(a) (United States Sentencing Commission, *Guidelines Manual* 1.5–1.6 (October 1987)); Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L.Rev. 1, 8–12, 25–28 (1988). In the main, the Guidelines base the sentence on the charges of which the defendant has been convicted. See *United States v. Missick*, 875 F.2d 1294, 1302 (7th Cir.1989). If the defendant is convicted on multiple related charges, these are treated as one offense, Guidelines § 3D1.2; if the defendant is convicted on unrelated charges, each group of related counts leads to additional punishment, but each additional group receives a lesser weight than the last, § 3D1.4. If the defendant has committed criminal acts that do not lead to convictions, these may be taken into account in choosing a sentence within the range otherwise appropriate, § 1B1.4. This charge-offense approach has an important exception:

> [S]olely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction [shall be considered].

Guidelines § 1B1.3(a)(2). Section 3D1.2(d) in turn provides that

[c]ounts are grouped together if the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

Putting § 1B1.3(a)(2) together with § 3D1.2(d) produces the conclusion that when the Guidelines provide tables that cumulate the amount sold or stolen, any acts that "were part of the same course of conduct or common scheme or plan as the offense of conviction" should be included in the computation of the amount on which the offense level depends, whether or not the defendant was convicted of selling or stealing these additional amounts. This is the holding of *Williams*, *Taplette*, *Ykema*, *Allen*, and *Scroggins*.

*Restrepo* came to a different conclusion because § 1B1.3(a)(2) points to a provision (§ 3D1.2) that deals with the cumulation of convictions. Reading § 1B1.3(a)(2) as covering only "offenses ... for which § 3D1.2(d) would require grouping", the Ninth Circuit invoked the "plain meaning" rule. Section 3D1.2(d) never "requires", or even allows, grouping unless the defendant has been convicted. It added that even if § 1B1.3(a)(2) made § 3D1.2(d) ambiguous, the "rule of lenity" would interdict reliance on conduct not supporting a conviction.

■ Section 1B1.3(a)(2) has a "plain meaning", but not the one *Restrepo* ascribed to it. It calls for inclusion of amounts in "offenses *of a character* for which § 3D1.2(d) *would* require grouping" (emphasis added). The subjunctive ("would") indicates a contrary-to-fact condition. When offenses are "of a character" described in § 3D1.2(d)—that is, when the base offense score depends on the quantity sold, stolen, etc.—and when these offenses "would" be grouped in the event of conviction, then the amounts are added whether or not there has been a conviction. Any doubt left by the text is resolved by Application Note 2, specifying that "multiple convictions are not required." The Sentencing Commission's application notes are contemporaneous explanations of the Guidelines by their authors, entitled to substantial weight. *United States v. Pinto*, 875 F.2d 143, 144 (7th Cir.1989).

The "Background" information supplied by the Commission at *Guidelines Manual* 1.19 (Jan.1988) reiterates the point. "The distinction is made on the basis of § 3D1.2(d), which provides for grouping ... all counts charging offenses of a type covered by this subsection. However, the applicability of subsection (a)(2) does not depend upon whether multiple counts are alleged." The Commission then offers a reason for departing from charge-offense sentencing: crimes "often involve a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing." Indeed so. Embezzlers may filch $200 per day or drug dealers sell 30 grams per day; the number of counts into which the offense is broken (and how many of them the prosecutor elects to charge and press) have almost nothing to do with the seriousness of the offense, which depends on total quantity. To treat likes alike, the Commission sums up repeated sales. Anything else allows what is fundamentally the same conduct to get very different treatment according to how the offense is parcelled among counts, an essentially arbitrary choice. Yet the Commission recognized that the goal of equivalence could not be pressed too far without embroiling the courts in studies of defendants' entire lives. Thus the limit in § 1B1.3(a)(2) to transactions that "were part of the same course of conduct or common scheme or plan as the offense of conviction".

■ The rule of lenity is a tie-breaker when there is an otherwise-unresolved ambiguity. It therefore does not come into play here. We doubt that it has much role to play in interpreting the Guidelines. Although the rule may be useful in understanding statutory minimum and maximum penalties as well as in defining the elements of offenses, *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980), the Guidelines

set neither maximum nor minimum penalties. They structure and confine the ways in which judges exercise discretion in sentencing, but circumstances may call for departures. So far judges have been imposing sentences within the ranges in 82% of the cases and departing in the other 18%. Sentencing Commission, *1988 Annual Report* 37–38 (1989). Before the Guidelines, judges routinely took into account other bad acts of which the defendants had not been convicted. The use they made of this information was all but unreviewable on appeal. Defendants had no expectations about the degree to which this information would enter the lists against them and could not have invoked the rule of lenity to prevent its use. The Guidelines make more uniform among defendants and sentencers a use that has been customary for many generations of judges. We are not at risk of imposing penalties greater than Congress authorized, or of inducing the ultracautious to abstain from lawful activities that might be confused with the subjects of the statute; we are not worried about the adequacy of notice. The "purposes underlying the rule of lenity [are] to promote fair notice to those subject to the criminal laws, to minimize the risk of selective or arbitrary enforcement, and to maintain the proper balance between Congress, prosecutors, and courts". *United States v. Kozminski*, —— U.S. ——, 108 S.Ct. 2751, 2764, 101 L.Ed.2d 788 (1988). As none of these is in play, the rule does not apply.

### B

■ Judge Marovich sentenced White within the level 16 range because he believed that only the drug included within the offense of conviction should be counted. Guidelines § 1B1.3(a)(2), which for reasons just given calls for the inclusion of amounts not covered by any conviction, requires the judge to add all quantities that "were part of the same course of conduct or common scheme or plan as the offense of conviction". White's "course of conduct" was receiving a package of cocaine base—presumably after ordering and paying for it. Although as the district judge emphasized White received only 1.88

grams, that was fortuitous. Had the packages slipped by the Customs Service, White would have received 302 grams; had the DEA decided to make a controlled delivery of the original packages instead of removing most of the drug, the same 302 grams would have arrived. The nature and seriousness of *White's* conduct is the same no matter how much of the cocaine the DEA took out.

A case such as this illustrates a function of § 1B1.3(a)(2). It would perpetuate irrational distinctions in sentencing to make the difference between 33 months (the maximum sentence for a level 18 offense) and 151 months (the minimum sentence for a level 34 offense) depend on the DEA's decision to drain most of the cocaine from the packages bound for White. If the DEA had added an extra 200 grams to the original 302, this would not bump White's offense up in seriousness; why should the decision to remove cocaine reduce it? If investigatory agencies can secure higher sentences by allowing drugs to be delivered despite detection, they will be tempted to do this, creating a risk that larger flows will reach consumers if the "controlled delivery" becomes uncontrolled and the drugs disappear.

White embarked on a single "course of conduct": ordering and receiving a shipment of cocaine base. The amount in the packages when they entered the country is the total that must go into the base offense level under § 1B1.3(a)(2). Although the district judge emphasized that White's crime was possessing 1.88 grams, the *seriousness* of this particular crime, and therefore the appropriate sentence, depends on the original quantity. To base the sentence on the larger amount is not to punish White for a crime he didn't commit; it is to use consistent criteria to choose the sentence for the crime he did commit. *Scroggins*, 880 F.2d at 1212–13.

White has two potential ways out. First, he argues that Judge Marovich acquitted him of possessing any amount greater than 1.88 grams—either when finding that he possessed only 1.88 grams or when entering an acquittal on the conspiracy charge.

Second, White observes that any amounts greater than 1.88 grams are at best an attempt to obtain possession. Having failed to procure the drug, he should not be sentenced as if he had succeeded.

These are two variations on a theme. Questions of knowledge to one side, there were no factual disputes at White's trial. The parties agreed that the packages originally contained 302 grams of cocaine base. Judge Marovich acquitted White of conspiracy not because the package as delivered contained 1.88 grams rather than 157 or 302, but because the prosecutor did not establish the identity of any other conspirator. He found that White possessed 1.88 grams because that is all the DEA let him receive. Because there is no general federal offense of attempt, White's efforts to get 302 rather than 2 grams were not a separate crime.

■ Had the judge found, expressly or implicitly, that the prosecutor failed to prove beyond a reasonable doubt that the packages contained 302 grams at the border, we would have a difficult case. Differences in the burden of persuasion might allow a court to include drugs in a sentencing computation if persuaded that the prosecutor established the defendant's connection to them by a preponderance of the evidence even though not beyond a reasonable doubt. The Guidelines' standard for resolving disputes is a preponderance of the evidence, not reasonable doubt. *Wright*, 873 F.2d at 441–44. Cf. *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984) (civil forfeiture is proper despite earlier acquittal); *Jones v. Thieret*, 846 F.2d 457 (7th Cir.1988) (the Constitution does not establish the prosecutor's burden in sentencing). Several courts of appeals, including ours, have allowed district judges to augment sentences after concluding that the defendants really did things of which they had been acquitted. *United States v. Cardi*, 519 F.2d 309, 314 n. 3 (7th Cir.1975); see also *United States v. Bernard*, 757 F.2d 1439, 1444 (4th Cir.1985) (collecting cases); cf. *United States v. Dowling*, 855 F.2d 114 (3d Cir.1989) (prosecution may use

as substantive evidence under Fed.R.Evid. 404 offenses of which the defendant has been acquitted), cert. granted, —— U.S. ——, 109 S.Ct. 1309, 103 L.Ed.2d 579 (1989). On the other hand, it might make sense to treat an acquittal as a bar in order to avoid both nice questions of proof and the appearance of inconsistency. Because the court did not find, directly or as an implication of the acquittal on the conspiracy charge, that the packages originally contained less than 150 grams of cocaine base (the minimum for level 34), the problem does not arise in White's case. We would need to resolve it if the prosecutor had appealed with respect to the two-point enhancement for possessing a gun during the commission of the offense, despite the acquittal on the charge under 18 U.S.C. § 924(c), see *United States v. Juarez–Ortega*, 866 F.2d 747, 748–49 (5th Cir.1989), but the Solicitor General's decision to confine the scope of the appeal makes the subject moot.

■ Although everyone concedes that White did not succeed in obtaining the 302 grams, that amount must be included because Guidelines § 2D1.4(a) provides that when the defendant is convicted of "an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the ... attempt had been completed." As Judge Marovich found the facts, White tried to obtain 302 grams of cocaine base but succeeded in possessing only 1.88 grams. The whole amount therefore counts. Although White might have responded that § 2D1.4(a) may not be used in this fashion because it refers to convictions for attempt, while he was not convicted of anything beyond the 1.88 grams, this would be functionally the same argument as the Ninth Circuit's in *Restrepo* that because § 1B1.3(a)(2) refers to a rule (§ 3D1.2) about grouping convictions, only the amounts in convictions may be aggregated. The Guidelines treat success and failure, conviction and no conviction, alike in drug cases, so long as the amounts are ascertainable. Because § 1B1.3(a)(2) calls for consideration of "all such acts and omissions that were part of the same course of

conduct", and because there is no basis for saying that the 1.88 grams White obtained were part of a course of conduct or scheme *different* from the 300 grams the DEA extracted, the sentence must be vacated and the case remanded so that the court may impose a new sentence starting from a base offense level of 34.

### C

■ Having held that § 1B1.3(a)(2) receives the scope its language portends, we must be equally scrupulous to ensure that it receives no more than that. The Sentencing Commission rejected real-offense sentencing in favor of a charge-offense approach modified in quantity-based crimes to include amounts that "were part of the same course of conduct or common scheme or plan as the offense of conviction". Sentence must be based on the sales that were part of one "common scheme or plan" (such as a single conspiracy) or a single "course of conduct" (the unilateral equivalent to the conspiracy). Offenses of the same kind, but *not* encompassed in the same course of conduct or plan, are excluded.

■ Roe was charged with participating in a conspiracy lasting between January and May 1986, with selling one ounce of cocaine to an informant in May 1988, and with discussing a further sale of four ounces to the same informant in June. Under the indictment's own terms, the conspiracy of 1986 was not "the same course of conduct or common scheme or plan as the offense" of selling cocaine in 1988. Roe's sources of cocaine in 1988 were not the conspirators of 1986, and his customer also differed. Chief Judge Crabb did not find that the offenses were related in any way other than by the nature of the drug. The one-ounce sale and the contemplated four-ounce deal may well have been part of a single course of conduct. Roe told the informant that he had five ounces of cocaine for sale; the informant bought one ounce and later tried to purchase the other four but apparently was outbid. Although § 1B1.3(a)(2) requires the aggregation of these two amounts if they were related as

the evidence suggests, the district judge did not make the necessary finding.

The prosecutor does not contend that the 1986 conspiracy and the 1988 sales were part of a single scheme or course of conduct. Nonetheless, according to the prosecutor, all should be included because they are "of the same or similar character", Fed.R.Crim.P. 8(a), and therefore were properly joined in the same indictment. Rule 8(a) serves functions other than sentencing, and to use it as the basis of aggregation would be to choose a stripe of real-offense sentencing that the Sentencing Commission rejected. The Guidelines ask judges to seek a common thread to identify a single "real offense" and then stop. Rule 8(a) asks a totally different question, concerning degrees of confusion or prejudice if there should be a joint trial. The Guidelines do not refer to Rule 8(a); although the "common scheme or plan" language of § 1B1.3(a)(2) may be found in Rule 8(a), the "same course of conduct" language is the Sentencing Commission's invention, different words to serve a different function. Guidelines § 3D1.2(d) requires grouping of all drug offenses; § 1B1.3(a)(2) calls for inclusion of amounts on which there has been no conviction only if § 3D1.2(d) would require grouping and the transactions are part of one plan or course of conduct. The United States Attorney's approach would delete that second requirement from § 1B1.3(a)(2).

We wonder why the prosecutor should want a rule that *requires* addition even in the absence of a single course of conduct. That would require much leg-work and fact-finding, and it would deprive the government of an important concession used in plea bargaining, one it found advantageous in this very case. No matter; the Sentencing Commission, not the prosecutor, has made the fundamental choice, and in consequence the amounts involved in the 1986 conspiracy may not be used as the basis of a sentence on the 1988 sale. Whether the two 1988 transactions should be aggregated is a question open for decision on remand under the standards we have articulated.

The sentence in Roe's case (No. 89–1745) is vacated, and the case is remanded for further proceedings consistent with this opinion. The conviction in White's case (No. 89–1313) is affirmed, and the sentence (No. 89–1487) is vacated and the case remanded with instructions to impose a new sentence starting from a base offense score of 34.