UNITED STATES of America, Appellee,

v.

**Antonio FRANKLIN, Appellant.**

**No. 90–1946.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1990.

Decided Feb. 22, 1991.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and HANSON,[*] District Judge.

JOHN R. GIBSON, Circuit Judge.

Antonio Franklin appeals from his conviction and sentencing for possession of cocaine with the intent to distribute. 21 U.S.C. § 841(a) and 841(b)(1)(C) (1988). Franklin was sentenced to 121 months, to be followed by a three year term of supervised release, on the basis of his Category I criminal history. On appeal Franklin argues that the evidence was not sufficient to convict him and that the district court[1] erred in basing his sentence on the amount of cocaine the government intercepted before it was delivered to Franklin and in failing to depart downward from the Category I sentencing level. We affirm.

A postal inspector intercepted a parcel directed to Franklin's address in St. Louis, with a nonexistent return address and an addressee, "Stacy Johnson," who was not listed as a resident of Franklin's home or as a holder of a Missouri driver's license. A narcotic sniffing dog indicated the parcel contained drugs, and after getting a search warrant, the inspector opened the parcel and found a television and stereo, each with two kilo packages of cocaine inside. On the authority of a court order, the postal inspectors then installed a transmitter in the parcel that would notify law enforcement officers when the television and stereo were next removed from the box. The inspectors kept all but one ounce of the cocaine from the packages. They wrapped the one ounce up with packages of flour to simulate the weight of four kilos of cocaine. Then, they packed the flour and the one ounce of cocaine inside the television and stereo, repacked the parcel and delivered it to Franklin's address.

A woman answered the door and accepted the package. She signed for the parcel as "Stacy Johnson," though that was not

Nelson Rich, St. Louis, Mo., for appellant.

Mitchell Stevens, Asst. U.S. Atty., St. Louis, Mo., for appellee.

---

[*] The Honorable William C. Hanson, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri.

her name. Three hours later the transmitter indicated the parcel had been opened. Postal inspectors, armed with a search warrant, went to Franklin's door, told him of the warrant, and asked him to let them in. They heard an adult say "no way." They forced the door open and found Franklin and a five year old boy alone in the residence.

Once inside the residence, the inspectors found the parcel had been opened and the television and stereo were lying on a bed in the bedroom. A screw had been completely removed from the back of the stereo, and another screw was loosened. There was a knife on the bed next to the stereo. Also in the residence were a triple beam scale and a box of sandwich bags with the corners cut off, both of which are commonly used in the drug trade.

Franklin admitted that he lived at the address to which the parcel was directed. The parties stipulated that the substance seized from the television and stereo before the package was delivered was 3656.7 grams of 83 percent pure cocaine. The amount of cocaine actually delivered to Franklin's residence was 17.4 grams, also with a purity of 83 percent. There was expert testimony that the street value of the cocaine originally in the package was about $735,000 and that in the opinion of the expert this amount would be intended for distribution. A jury convicted Franklin.

■ Franklin first argues that there was insufficient evidence to support a conviction for possession of cocaine with intent to distribute. He contends that there was no evidence that he had knowledge of what was in the parcel before it was opened, that he was involved in the mailing of the parcel, or was the intended recipient, as it was not addressed or delivered to him. He was arrested in the living room and the cocaine was in the bedroom. There was no evidence of fingerprints or other evidence linking him to the contraband. He argues that mere occupancy in the house with the drug is not enough. Further, he discounts the presence of the triple beam scales and plastic bags, because there was no evidence

of traces of cocaine on either, and they were in the kitchen rather than the living room. He argues he did not have an opportunity to exercise dominion or control over the contraband, because he was arrested immediately after opening the parcel.

"We must affirm [the] conviction if, viewing the evidence in the light most favorable to the government, there is substantial evidence to support the jury's verdict. In making this determination, we must give the government the benefit of all inferences that may reasonably be drawn from the evidence. The evidence need not exclude every reasonable hypothesis of innocence, but simply be sufficient to convince the trier of fact beyond a reasonable doubt that the defendant is guilty." *United States v. Meyer*, 906 F.2d 1247, 1252 (8th Cir.1990) (citations omitted) (per curiam).

Applying this standard and scrutinizing the record, we conclude that the verdict must stand. The package was directed to Franklin's address. The jury could reasonably have determined that Franklin opened the package and immediately set about dismantling the stereo to get to the cocaine. This supports an inference that he knew what was in the package and intended to take possession of it. The scale and distinctively altered baggies, as well as the amount and purity of the cocaine, support the inference that Franklin intended to distribute the drug.

■ Franklin next argues that the district court erred in sentencing him on the basis of the amount of cocaine originally in the package, rather than the amount actually delivered. The district court sentenced Franklin in accordance with Section 1B1.-3(a)(2) of the Sentencing Guidelines, which bases the sentence in possession cases on "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." Franklin argues that he cannot be said to have had constructive possession of the cocaine that was intercepted. This same argument was raised and rejected in *United States v. White*, 888 F.2d 490 (7th Cir.1989). In that case, the Customs Ser-

vice intercepted a package, removed some cocaine from it and delivered the package with a much smaller amount of cocaine still in it. The Seventh Circuit reversed a sentence based on the small amount of cocaine actually delivered. The *White* court reasoned:

A case such as this illustrates a function of § 1B1.3(a)(2). It would perpetuate irrational distinctions in sentencing to make the difference between 33 months (the maximum sentence for a level 18 offense) and 151 months (the minimum sentence for a level 34 offense) depend on the DEA's decision to drain most of the cocaine from the packages bound for White. If the DEA had added an extra 200 grams to the original 302, this would not bump White's offense up in seriousness; why should the decision to remove cocaine reduce it? If investigatory agencies can secure higher sentences by allowing drugs to be delivered despite detection, they will be tempted to do this, creating a risk that larger flows will reach consumers if the "controlled delivery" becomes uncontrolled and the drugs disappear.

White embarked on a single "course of conduct": ordering and receiving a shipment of cocaine base. The amount in the packages when they entered the country is the total that must go into the base offense level under § 1B1.3(a)(2). Although the district judge emphasized that White's crime was possessing 1.88 grams, the *seriousness* of this particular crime, and therefore the appropriate sentence, depends on the original quantity. To base the sentence on the larger amount is not to punish White for a crime he didn't commit; it is to use consistent criteria to choose the sentence for the crime he did commit.

888 F.2d at 498 (citation omitted) (emphasis in original). The reasoning in *White* is sound, and the district court acted correctly in basing the sentence on the amount of cocaine originally in the package.

 Finally, Franklin argues that the district court misunderstood the amount of discretion it had in sentencing him under the Sentencing Guidelines' criminal history provisions. Franklin had no prior convictions, so the court sentenced him at the very lowest level provided in the Guidelines, Category I.

Franklin asked for a downward departure from this category on the basis of his lack of criminal history, but the district court stated that it could not depart below the lowest level. Franklin argues this was error. We hold it was not. Sentencing Guideline § 4A1.3 explicitly addresses this situation:

The lower limit of the range for a Category I criminal history is set for a first offender with the lowest risk of recidivism. Therefore, a departure below the lower limit of the guideline range for a Category I criminal history on the basis of the adequacy of criminal history cannot be appropriate.

The conviction and sentence are affirmed.