**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

v.                                                    No. 04-4032

STEVE FULLILOVE,
          *Defendant-Appellee.*

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Jr., Senior District Judge.
(CR-02-467)

Argued: October 1, 2004

Decided: November 2, 2004

Before WILKINS, Chief Judge, TRAXLER, Circuit Judge,
and Roger W. TITUS, United States District Judge
for the District of Maryland, sitting by designation.

Vacated and remanded with instructions by published opinion. Chief
Judge Wilkins wrote the opinion, in which Judge Traxler and Judge
Titus joined.

## COUNSEL

**ARGUED:** Jane Barrett Taylor, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South
Carolina, for Appellant. James Paul Rogers, Columbia, South Caro-
lina, for Appellee. **ON BRIEF:** J. Strom Thurmond, Jr., United States
Attorney, Columbia, South Carolina, for Appellant.

**OPINION**

WILKINS, Chief Judge:

The United States appeals the sentence imposed on Steve Fullilove following his conviction for possessing with the intent to distribute a quantity of cocaine base, *see* 21 U.S.C.A. § 841(a)(1) (West 1999). The Government contends that the district court erred in excluding from its drug quantity determination the amount of cocaine base that was removed from a package prior to its controlled delivery to Fullilove. For the reasons set forth below, we vacate and remand for resentencing.

I.

On May 14, 2002, a postal inspector in Columbia, South Carolina intercepted a suspicious package addressed to Kevin Adams at 221 June Bug Court. Further investigation revealed that no "Kevin Adams" lived at that address and that the package contained 26.71 grams of cocaine base.

Law enforcement officers removed all except .37 gram of cocaine base from the package and inserted a transmitting device designed to signal a remote receiving unit if the package was opened. An officer disguised as a mail carrier approached 221 June Bug Court with the package; an exterminator who arrived at the same time as the officer opened the door after receiving no response to repeated knocks. The officer observed Fullilove, the only occupant of the apartment at the time of the controlled delivery, sitting at a computer. Fullilove came to the door and informed the officer that he was not "Kevin Adams" but could get the package to him. Fullilove signed the name "Eric Hall" on the delivery log. A minute or two later, the alarm on the transmitter sounded and Fullilove was observed walking away from a dumpster near the apartment. Fullilove was arrested and the package, which had indeed been opened, was recovered from the dumpster. A subsequent search of the apartment revealed, next to the computer, a slip of paper bearing the same tracking number as the package.

After being advised of his rights, *see Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966), Fullilove informed officers that he had come to Columbia at the invitation of Oscar Jordan, the lessee of 221 June Bug Court, for the purpose of selling drugs. Fullilove additionally stated that he had known the package was coming and that it contained cocaine base.

Based on the foregoing evidence, a jury convicted Fullilove of possessing with the intent to distribute "a quantity of cocaine base." J.A. 22. At sentencing, the Government argued that Fullilove should be held accountable for the entire 26.71 grams of cocaine base that were originally in the package.\* Rejecting this contention, the district court sentenced Fullilove based only on the .37 gram that was actually in the package at delivery. The court reasoned that because no evidence connected Fullilove to the mailing of the package, there was no basis on which to attribute the larger quantity to him.

The drug quantity finding of the district court resulted in a guideline range of 27-33 months. The court sentenced Fullilove to 30 months imprisonment, and the Government now appeals.

## II.

## A.

Before addressing the merits of the Government's appeal, we first must consider its claim regarding our standard of review. Ordinarily, drug quantity determinations are reviewed for clear error. *See United States v. Kiulin*, 360 F.3d 456, 461 (4th Cir. 2004). The Government contends, however, that the ruling of the district court rested on a misinterpretation of the guidelines and therefore that it is subject to de novo review. *See United States v. Schaal*, 340 F.3d 196, 198 (4th Cir. 2003). We essentially agree with the Government. Because the facts here are undisputed, the only question before us is one of guidelines application, a question on which our standard of review approaches

---

\*Attribution of this quantity to Fullilove would have resulted in an offense level of 28, which, combined with Fullilove's Criminal History Category of V, would have yielded a guideline range of 130-162 months.

de novo. *See United States v. Gormley*, 201 F.3d 290, 293-94 (4th Cir. 2000).

## B.

Our resolution of this appeal is controlled by the relevant conduct guideline, which instructs that the defendant is accountable for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused." *United States Sentencing Guidelines Manual* § 1B1.3(a)(1)(A) (2003). The commentary explains that "[w]ith respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved." *Id.* comment. (n.2). Therefore, the question before us is whether Fullilove was "directly involved" with the approximately 27 grams of cocaine base originally shipped, or only with the .37 gram that remained in the package upon delivery.

Several of our sister circuits have addressed this same question. All have concluded that a defendant may be held accountable under relevant conduct principles for contraband removed from a package prior to a controlled delivery. *See United States v. Johnson*, 357 F.3d 980, 985-87 (9th Cir. 2004) (holding that the defendant was responsible for drugs removed from package prior to delivery because "[h]e intended and attempted to acquire it all" and the removal of the drugs "did not alter Johnson's conduct for purposes of calculating a base offense level"); *United States v. Ukomadu*, 236 F.3d 333, 340-41 (6th Cir. 2001) (holding that the defendant was responsible for drugs removed from package because he intended to and did take possession of the package, which would have contained the full quantity of drugs but for the fortuitous intervention of law enforcement officials); *United States v. Franklin*, 926 F.2d 734, 736-37 (8th Cir. 1991) (holding that the defendant was responsible for cocaine removed from package prior to controlled delivery because a contrary holding "would perpetuate irrational distinctions in sentencing" (internal quotation marks omitted)); *United States v. White*, 888 F.2d 490, 498-500 (7th Cir. 1989) (holding that the defendant was responsible for amount originally in package because "[t]he nature and seriousness of [the defendant's] conduct [was] the same no matter how much of the cocaine the DEA took out" of the package prior to delivery).

In each of these cases, the court noted the fortuity of intervention by law enforcement officials, stating that the fact of the intervention did not alleviate the seriousness of the defendant's conduct. *See, e.g., Johnson*, 357 F.3d at 987 (stating that fortuitous discovery and removal of drugs from package "did not alter Johnson's conduct for purposes of calculating a base offense level"); *White*, 888 F.2d at 498 ("To base the sentence on the larger amount is not to punish White for a crime he didn't commit; it is to use consistent criteria to choose the sentence for the crime he did commit."). However, it is also worth noting that two of the courts thought it important that the defendant had not only received the package, but had also arranged for its delivery. *See Johnson*, 357 F.3d at 987 (observing that the defendant's relevant conduct included ordering the narcotics); *White*, 888 F.2d at 498 ("White's 'course of conduct' was receiving a package of cocaine base—presumably after ordering and paying for it."); *cf. Franklin*, 926 F.2d at 736-37 (relying on *White* but not discussing whether the defendant had arranged delivery of the package containing drugs).

We take particular note of *Ukomadu*, in which the district court based the defendant's offense level on the entire quantity of heroin originally shipped rather than the quantity remaining in the package at the time of delivery. *See Ukomadu*, 236 F.3d at 340. Nowhere in its opinion affirming this ruling did the Sixth Circuit discuss whether the defendant had any role in the shipment of the package; as far as the opinion indicates, the only evidence was that the defendant retrieved the package from a storeroom where it had been placed after a coworker signed for it, *see id.* at 336. In affirming the defendant's sentence, the court reasoned that

> Defendant would clearly have received the entire 293 grams contained in the original package but for the fortuitous intervention of the customs officials. Defendant was personally involved as a participant who was the intended recipient of the package and who indeed did take delivery of the package. Thus, he . . . is responsible for the entire quantity of heroin.

*Id.* at 341.

We conclude that the district court erred in failing to attribute the pre-delivery weight of the cocaine base to Fullilove. Our resolution

of this question would no doubt be easier if the record contained evidence that Fullilove had some role in the shipment of the package itself. Nevertheless, the undisputed facts are sufficient to establish that Fullilove was "directly involved" with the full quantity of narcotics. Fullilove came to Columbia a few days before the arrival of the package for the express purpose of selling drugs. He knew the package was coming, and he knew that it contained cocaine base. Moreover, Fullilove's own statements to police establish that he expected the package to contain a quantity of cocaine base sufficient for distribution, as opposed to personal use. *Cf. United States v. Hayes*, 971 F.2d 115, 117-18 (8th Cir. 1992) (remanding for further factual findings regarding whether the defendant should be held accountable for pre-delivery quantity of narcotics when the evidence indicated that the defendant might have believed that the package contained only a personal-use quantity of cocaine base). We agree with our sister circuits that under circumstances like these, the fortuity that the package was intercepted by law enforcement officers should not reduce the seriousness of Fullilove's offense.

This conclusion is supported by the commentary to the relevant conduct guideline, which suggests that intervention of law enforcement does not automatically absolve a defendant of liability for controlled substances that he did not personally handle because of the intervention. *See* U.S.S.G. § 1B1.3, comment. (n.2(a)(1)) (stating that defendant convicted of helping unload a shipment of marijuana may be held responsible for entire shipment even though law enforcement intervened before the unloading was complete). By the same token, the commentary makes clear that actual knowledge of the type or quantity of contraband is not critical to the drug quantity determination. *See id.* ("[A] defendant who transports a suitcase knowing that it contains a controlled substance . . . is accountable for the controlled substance in the suitcase regardless of his knowledge or lack of knowledge of the actual type or amount of that controlled substance.").

Our decision is supported also by sound policy considerations. Law enforcement officials remove most of the contraband from intercepted packages in recognition of the risk that a controlled delivery may go awry and the contraband may reach its intended market. A holding that Fullilove, who clearly intended to obtain whatever quantity of

cocaine base was in the package, should not be held accountable for the full amount could have the perverse effect of encouraging law enforcement officers to take unacceptable risks for the sake of obtaining a sentence that accurately reflects the gravity of the defendant's criminal conduct. We agree with the Seventh Circuit that

> [a] case such as this illustrates a function of § 1B1.3(a)(2). It would perpetuate irrational distinctions in sentencing to make the difference between 33 months (the maximum sentence for a level 18 offense) and 151 months (the minimum sentence for a level 34 offense) depend on the DEA's decision to drain most of the cocaine from the packages bound for White. If the DEA had added an extra 200 grams to the original 302, this would not bump White's offense up in seriousness; why should the decision to remove cocaine reduce it? If investigatory agencies can secure higher sentences by allowing drugs to be delivered despite detection, they will be tempted to do this, creating a risk that larger flows will reach consumers if the "controlled delivery" becomes uncontrolled and the drugs disappear.

*White*, 888 F.2d at 498.

### III.

For the reasons set forth above, we vacate the sentence imposed by the district court and remand with instructions to resentence Fullilove based upon the 26.71 grams of cocaine base in the package when it was intercepted by the postal inspector.

*VACATED AND REMANDED WITH INSTRUCTIONS*