FILED
United States Court of Appeals
Tenth Circuit

December 17, 2014

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MATTHEW SCOTT STOREY,

    Defendant - Appellant.

No. 14-5019
(D.C. No. 4:13-CR-00156-CVE-1)
(N.D. Okla.)

---

ORDER AND JUDGMENT[*]

---

Before **GORSUCH**, **SEYMOUR**, and **BACHARACH**, Circuit Judges.

---

Matthew Storey was waiting in Tulsa on a FedEx package. He wasn't sure exactly what it would contain, but he knew it would be drugs. And he knew what he had to do. It's a job he had carried out many times before: accept the delivery and then drop the box on the side of a country road, where someone would pick it up and smuggle the contents into an Oklahoma prison. The intended recipients

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

were gang members Mr. Storey knew from his own spell in prison for making methamphetamine and other crimes.

Things didn't go to plan. FedEx has a policy against transporting contraband and Joshua Guthery, a longtime employee versed in spotting suspicious packages, picked out Mr. Storey's parcel at a sorting facility. Mr. Guthery saw that the sender had paid in cash, completed the air bill by hand, and used an awful lot of tape — facts that, in Mr. Guthery's experience at least, conspired to suggest contraband. Opening the package, Mr. Guthery found six vacuum-sealed bundles wrapped in cellophane, a discovery that he thought tended to confirm his suspicions.

Mr. Guthery called the police. In the meantime, he passed the parcel to Gary Michener, a coworker, and asked him to investigate further. Mr. Michener took a razor blade to the bundles and, by the time the police arrived, he had sliced through most of the cellophane surrounding one bundle. It's a task he continued while the officers watched. The bundle split open, revealing methamphetamine. Soon enough Mr. Storey was arrested and pleaded guilty to drug charges. In doing so, though, he reserved the right to pursue this appeal.

Mr. Storey argues first and primarily that the government violated his Fourth Amendment rights by searching the contents of the package; that all evidence about the drugs must be suppressed; and that the charges against him should be dismissed. But the district court observed a flaw in the essential

premise of this argument and so must we: the Fourth Amendment concerns itself only with searches performed by the government, not by private actors like FedEx. *See, e.g.*, *United States v. Smythe*, 84 F.3d 1240, 1242-43 (10th Cir. 1996).

Of course, private actors can effectively become governmental agents when the state "coerces, dominates or directs [their] actions." *Id.* at 1242 (quoting *Pleasant v. Lovell*, 876 F.2d 787, 796 (10th Cir. 1989)). But the facts don't support that kind of conclusion here. Officers didn't instigate the search. They didn't encourage it. They didn't aid it. They didn't even become involved until FedEx employees had already opened the package and one was busy slicing through bundles inside. We don't overlook the fact Mr. Guthery has contacted the police before about suspicious packages, maybe as many as one hundred times. Neither do we ignore the fact Mr. Guthery and Mr. Michener seemed intent on helping the police. But private persons are still free to choose to help the government without becoming governmental agents. *See id.* at 1243 (finding no coercion where bus station manager who contacted police searched a package in the presence of officers); *United States v. Alexander*, 447 F.3d 1290, 1297 (10th Cir. 2006) (holding that an agency relationship doesn't develop just because the government is the beneficiary of a private party's actions).

In his reply brief Mr. Storey introduces a provocative new fact. He notes that a federal grand jury in California in July 2014, a year after the events in this

case, indicted FedEx for conspiring to traffic misbranded prescription drugs for Internet pharmacies. *See* Indictment, *United States v. FedEx Corp.*, No. 3:14-CR-00380-CRB (N.D. Cal. July 17, 2014). But Mr. Storey mentions the fact in a passing sentence and promptly does nothing with it. We can see how someone might try to develop further facts and argument around this nub of an idea and suggest that the impending indictment in California placed such pressure on the company to cooperate that its actions in Oklahoma were effectively coerced. Sometimes those facing a potential indictment do agree to become governmental agents. But in this case we just don't know. We don't because Mr. Storey only mentions the indictment in a single sentence and moves on, leaving the rest to our imagination. Did the company know of the impending indictment? What messages did it receive from the government? Did it reach any agreements with the government? What did it communicate to employees like Mr. Guthery? We have no idea. And we are not inclined to guess. It is not for courts to conjure facts and arguments to support a theory so fleetingly floated and quickly dropped. *See Yeomalakis v. FDIC*, 562 F.3d 56, 61 (1st Cir. 2009) ("It is not our job . . . to create arguments for someone who has not made them or to assemble them from assorted hints and references scattered throughout the brief."); *see also Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007) (declining to pass upon "cursory statements" made "without supporting analysis and case law").

Mr. Storey's remaining three challenges to his sentence bear their own problems.

First, he complains about the quantity of drugs the district court attributed to him when calculating his advisory guidelines sentence. But under U.S.S.G. § 1B1.3(a)(1)(A), a defendant is deemed responsible for all acts and omissions he willfully caused. The district court found that Mr. Storey willfully agreed to and caused the receipt of the FedEx package and was thus responsible for the 2.39 kilograms of methamphetamine found inside. We see no reversible error in this holding. That's not to say that when calculating the applicable advisory guidelines range a district court must always find a defendant responsible for the full amount of drugs contained in every package he receives. Let alone that a district court must issue a sentence in line with what the advisory guidelines advise. It is only to say we see no reversible error in the district court's decision to hold Mr. Storey responsible for the package's contents on the facts before us.

It seems every circuit to have faced a similar set of facts has reached a similar conclusion. *See United States v. Ukomadu*, 236 F.3d 333, 341 (6th Cir. 2001); *United States v. Fullilove*, 388 F.3d 104, 107-09 (4th Cir. 2004); *United States v. Johnson*, 357 F.3d 980, 985-87 (9th Cir. 2004); *United States v. Franklin*, 926 F.2d 734, 736-37 (8th Cir. 1991); *United States v. White*, 888 F.2d 490, 498-500 (7th Cir. 1989), *abrogated on other grounds by Stinson v. United States*, 508 U.S. 36 (1993). Neither do the only two cases Mr. Storey cites

suggest a different view. One addressed a situation in which the government offered no drug quantity evidence and the district court was left to guess how much the defendant should be held responsible for, a problem not present here; the other concerned the interpretation of a now-defunct section of the guidelines. *See United States v. Davis*, 981 F.2d 906, 910-12 (6th Cir. 1992); *United States v. Hayes*, 971 F.2d 115, 116-18 (8th Cir. 1992), *superseded by guidelines amendment as stated in United States v. Strange*, 102 F.3d 356, 360 n.6 (8th Cir. 1996).

Second, Mr. Storey says the district court should have granted his motion for a downward departure on the ground that the advisory guidelines range overrepresented the seriousness of his prior offenses. But we lack jurisdiction to review a district court's refusal to depart downward unless "the denial is based on the sentencing court's interpretation of the Guidelines as depriving it of the legal authority to grant" the requested relief. *United States v. Fonseca*, 473 F.3d 1109, 1112 (10th Cir. 2007). And that's not what happened here. The district court never suggested it lacked the authority to grant a downward departure. It just made clear that it considered Mr. Storey a poor candidate for one, given his extensive criminal history and his willingness to violate the law again only months after being released from prison himself.

Finally, Mr. Storey contends his sentence is substantively unreasonable. But the district court issued a within-guidelines and thus presumptively

reasonable sentence.  *See United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006).  In an effort to overcome that presumption, Mr. Storey suggests that the district court placed undue weight on the amount and purity of the methamphetamine.  But our review of the record confirms that the district court carefully considered all of the statutorily prescribed sentencing factors, including Mr. Storey's criminal history, his willingness to plead guilty, and the sentences of similarly situated defendants.  All of which tends to disprove Mr. Storey's complaint and leave us without solid ground for preferencing Mr. Storey's wish for a 10-year sentence over the district court's judgment that 15 years was more appropriate.

Affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge