**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-4196**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DAVID CHRISTOPHER REDFERN,

Defendant - Appellant.

---

**No. 22-4197**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ERIC ALEXANDER MCMILLER,

Defendant - Appellant.

---

Appeals from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Jr., District Judge. (1:20-cr-00340-WO-1; 1:20-cr-00340-WO-3)

---

Submitted: January 11, 2023                                Decided: April 7, 2023

---

Before WILKINSON, THACKER, and HARRIS, Circuit Judges.

---

Affirmed by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Wilkinson and Judge Thacker joined.

---

**ON BRIEF:**  Michael W. Patrick, LAW OFFICE OF MICHAEL W. PATRICK, Chapel Hill, North Carolina, for Appellant David Redfern.  Stacey D. Rubain, LAW OFFICE OF STACEY D. RUBAIN, Winston-Salem, North Carolina, for Appellant Eric McMiller. Kenneth A. Polite, Jr., Assistant Attorney General, Lisa H. Miller, Deputy Assistant Attorney General, Kevin Barber, Appellate Section, Jeremy R. Sanders, Jennifer L. Bilinkas, Fraud Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Sandra D. Hairston, United States Attorney, Nicole R. DuPre, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

David Christopher Redfern and Eric Alexander McMiller pleaded guilty to conspiracy and fraud charges arising from their involvement in a scheme to defraud two federal COVID-19 relief programs. The district court sentenced Redfern to a below-Guidelines term of 60 months' imprisonment, and McMiller to a within-Guidelines 63-month prison term. The defendants now appeal their sentences, arguing that the district court erred in several respects in calculating their Guidelines range. The district court gave thorough and serious consideration to their objections, and largely for the reasons given by the district court, we affirm.

## I.

This case involves a scheme to defraud two federal COVID-19 relief programs aimed at providing loans to small businesses affected by the coronavirus pandemic: the Paycheck Protection Program ("PPP") and the Economic Injury Disaster Loan ("EIDL") Program. Six people participated in the conspiracy led by James Stote. Defendants David Christopher Redford and Eric Alexander McMiller were among the four people recruited by Stote and an associate to apply for fraudulent loans.

Roughly speaking, the scheme worked as follows: The four recruits all established companies within about a month of each other in early 2020. Those companies had no actual business operations or employees. But Stote used the companies, and the recruits' personal and business information, to prepare false documentation for submission with PPP loan applications and then, in exchange for his efforts, sought a portion of the fraudulently

obtained loan proceeds. False PPP loan applications were submitted on behalf of all four recruits within days of each other in the spring of 2020, requesting a total of $2,576,874; some but not all of the applications were approved, and fraud alerts later recaptured some of the funds disbursed to the recruits. The defendants and the other recruits personally submitted their own fraudulent EIDL applications, making false statements about their companies like those in the PPP applications. Redfern submitted two such applications, one successfully, and received a $2,000 advance; McMiller submitted three applications and received two $10,000 advances.

A federal grand jury charged Redfern, McMiller, and their two co-recruits with conspiracy and fraud charges. Redfern and McMiller pleaded guilty, without plea agreements, to all the charges against them: conspiracy to commit wire fraud, *see* 18 U.S.C. § 1349; three counts of wire fraud, *see* 18 U.S.C. §§ 1343 and 2; and, for Redfern only, one count of bank fraud, *see* 18 U.S.C. § 1344(2).

The Probation Office prepared presentence investigation reports for Redfern and McMiller, to which both the defendants and the government lodged various objections. The district court addressed those objections over the course of a lengthy two-part sentencing hearing and in a nearly 30-page written notice of findings. Ultimately, the district court calculated an advisory Sentencing Guidelines range of 63 to 78 months' imprisonment for both Redfern and McMiller. The court sentenced Redfern to 60 months' imprisonment – a three-month downward variance from the sentencing range – followed by five years of supervised release. McMiller was sentenced to a 66-month term of imprisonment – near the lower end of the Guidelines range – followed by three years of

4

supervised release. The court also held Redfern, McMiller, and their two co-conspirators jointly and severally liable for restitution in the amount of $498,657.37, the total actual loss associated with their scheme.

Redfern and McMiller timely appealed.

## II.

On appeal, Redfern and McMiller renew the objections they made before the district court, arguing that the district court erred in multiple respects in calculating their Sentencing Guidelines range. As noted above, the district court gave those objections careful attention and thoroughly explained the factual predicate and legal reasoning behind its determinations. We see no reversible error in the district court's findings, and largely for the reasons given by the district court, we affirm.

## A.

First, the defendants argue that the district court erred in calculating the amount of loss attributed to them for Guidelines purposes. The district court attributed to each defendant the entire loss intended by the conspiracy – including the fraudulent loans sought under both the PPP and EIDL programs – for a total of $2,778,474.85. Under the Guidelines, that led to a 16-level enhancement to each defendant's offense level. *See* U.S.S.G. § 2B1.1(b)(1)(I) (specifying 16-level increase for losses exceeding $1,500,000). On appeal, the defendants contend that the district court misapplied the "relevant conduct" Guideline, *see* U.S.S.G. § 1B1.3(a)(1)(B), improperly holding them accountable for the intended losses of their co-conspirators.

5

As the district court explained, under § 1B1.3(a)(1)(B), a defendant may be held responsible at sentencing for "reasonably foreseeable acts [by others] in furtherance of, and within the scope of, jointly undertaken [criminal] activity." S.J.A. 670; U.S.S.G. § 1B1.3(a)(1)(B). And here, the court concluded, all four of the recruits acted in furtherance of what was "clearly jointly undertaken activity," J.A. 252: their very similar false loan applications were submitted at essentially the same time, and then in some cases they attempted to transfer the funds they received to each other. The scope of that scheme extended to both PPP and EIDL applications, the court determined, and each recruit's loan applications were reasonably foreseeable to the others. Accordingly, § 1B1.3(a)(1)(B) required "aggregation of each individual [d]efendant's fraudulent activity," for a total intended loss of $2,778,474.85. S.J.A. 670.

We review only for clear error the district court's calculation of the loss amount, *see United States v. Otuya*, 720 F.3d 183, 191 (4th Cir. 2013), and its application of the relevant-conduct standard to the factual circumstances before it, *see United States v. McVey*, 752 F.3d 606, 610 (4th Cir. 2014) ("Such analysis constitutes factfinding that we review for clear error.").[1] In our view, and for the reasons elaborated on by the district

---

[1] Redfern and McMiller also argue, for the first time on appeal, that the district court was required to make more particularized findings as to the scope of the joint criminal activity to which they agreed. *See United States v. Bolden*, 325 F.3d 471, 499 (4th Cir. 2003) ("[A] sentencing court, in order to hold a defendant accountable for the conduct of his coconspirators, should make particularized findings with respect to both prongs of § 1B1.3(a)(1)(B)."). We review this unpreserved procedural claim for plain error. *See, e.g.*, *United States v. Austin*, 634 F. App'x 98, 100 (4th Cir. 2015) (per curiam). The defendants have not convinced us that the district court's findings with respect to § 1B1.3(a)(1)(B) were insufficient, let alone that any such insufficiency would qualify as

court, *see*, *e.g.*, J.A. 252–55, the evidence before the district court amply supports its relevant-conduct determination, establishing by a preponderance of the evidence – at the least – that the four recruits were working together in furtherance of their joint scheme and that their individual acts were reasonably foreseeable, if not actually known, to each other. *See United States v. Jones*, 31 F.3d 1304, 1316 (4th Cir. 1994) (government must establish relevant conduct by preponderance of the evidence); J.A. 255 (district court noting that it is "satisfied not only by a preponderance of the evidence, but very nearly beyond all doubt – or beyond all reasonable doubt" that each defendant's activities are "relevant conduct" as to the others).[2]

## B.

We reach a similar result with respect to the defendants' next two contentions:  that the district court erred in imposing a two-level enhancement for the use of "sophisticated means" under § 2B1.1(b)(10) of the Guidelines, and, as to McMiller, that the court erred in denying a mitigating role adjustment under § 3B1.2.  Again, we review these "essentially

"plain."  *See United States v. Oceanic Illsabe Ltd.*, 889 F.3d 178, 200 (4th Cir. 2018) (applying plain error standard).

[2] In a motion filed after the completion of briefing, the defendants argued that the district court erred by including intended as well as actual losses in its loss calculation, improperly relying on Guidelines commentary to do so.  *See* U.S.S.G. § 2B1.1 cmt. n.3(A) (defining "loss" as "the greater of actual loss or intended loss" associated with an offense). Because they did not alert the district court to this objection, our review would be for plain error only.  *See United States v. Limbaugh*, No. 21-4449, 2023 WL 119577, at *4 (4th Cir. Jan. 6, 2023).  And as we recently held in *Limbaugh*, a district court does not commit a "clear or obvious error in treating as valid longstanding Guidelines commentary" in the absence of controlling authority or a "robust consensus in other circuits" to the contrary. *Id.* (internal quotation marks omitted).

7

factual" determinations for clear error only. *See United States v. Adepoju*, 756 F.3d 250, 256 (4th Cir. 2014) ("Whether a defendant's conduct involved sophisticated means is an essentially factual inquiry, thus we review for clear error."); *United States v. Daughtrey*, 874 F.2d 213, 218 (4th Cir. 1989) (same for minor role adjustment).  And again, we find no clear error in the district court's determinations.

The sophisticated means enhancement, as the district court explained, applies to "especially complex or especially intricate offense conduct," U.S.S.G. § 2B1.1(b)(10) cmt. n.9(B), and it calls for "proof of complexity beyond the minimum conduct required to establish" the offense itself, S.J.A. 687 (quoting *United States v. Savage*, 885 F.3d 212, 228 (4th Cir. 2018) (internal quotation marks omitted).  That made this a close case, in the court's view, because "in isolation, the conduct of each [d]efendant does not appear especially complex," and could be seen as the minimum conduct required to establish fraud.  *Id.* at 688 (internal quotation marks omitted).  But the "cumulative impact of the criminal conduct," the court concluded, "compels a different result."  *Id.* at 689.  In its totality, the court determined, the scheme was indeed unusually complex, involving out-of-state recruits, a sophisticated understanding of the complicated requirements of two disaster loan programs, and the creation of false documents – including fraudulent bank statements and false IRS forms – sufficiently credible to survive initial scrutiny.  We can discern no clear error in this assessment of the evidence.

Likewise, the district court committed no clear error in determining that McMiller was not entitled to a two-level downward adjustment as a "minor participant" under the "mitigating role" Guideline.  *See* J.A. 312–313; U.S.S.G. § 3B1.2(b). As the district court

8

saw it, each of the four recruits, including McMiller, was the "average participant" in the scheme, taking McMiller outside the scope of § 3B1.2. *See* J.A. 313; U.S.S.G. § 3B1.2 cmt. n.3(A) (adjustment available only to defendants who "play[] a part in committing the offense that makes [them] substantially less culpable than the average participant"). That the scheme's leader and his close associate might have played *aggravating* roles, the court reasoned, did not by itself establish that McMiller was a "minor" participant, substantially less culpable than the average. J.A. 313. *See Daughtrey*, 874 F.2d at 219 ("While [one defendant] may prove to be more involved in criminal activity, it does not require a minimal or minor [r]ole in the [o]ffense be assigned to [other defendants] who fully participate in . . . the scheme.").

## C.

Finally, the defendants argue that the district court erred in applying a two-level enhancement under § 2B1.1(b)(12) of the Sentencing Guidelines. That provision mandates an upward adjustment for offenses that involve "conduct described in 18 U.S.C. § 1040," which in turn prohibits fraud "involving any benefit authorized, transported, transmitted, disbursed, or paid in connection with a major disaster declaration . . . or an emergency declaration under . . . the Robert T. Stafford Disaster Relief and Emergency Assistance Act." *See* U.S.S.G. § 2B1.1(b)(12); 18 U.S.C. § 1040(a). As many will recall, in March of 2020, the President issued a Stafford Act emergency declaration in response to COVID-19. *See* S.J.A. 673. So the question, as the district court explained, was whether loans under the PPP and EIDL program were "authorized" or "paid" "in connection with" that declaration. S.J.A. 673–74. After undertaking a detailed canvass of the legislative

9

origins and regulatory features of the two programs, the district court concluded that EIDL benefits (though not PPP benefits) were authorized "in connection with" a Stafford Act declaration, and accordingly applied the enhancement.  S.J.A. 678–83.

Although we have no reason to doubt the district court's analysis, we also have no need to pass on it here.  As the government argues, any error in applying § 2B1.1(b)(12) was clearly harmless, because even if the district court had resolved the § 2B1.1(b)(12) issue in the defendants' favor, it would have imposed the same sentences, and those sentences would have remained reasonable.  *See United States v. Gomez-Jimenez*, 750 F.3d 370, 382 (4th Cir. 2014) (explaining that we may "proceed directly to an assumed error harmlessness inquiry" under these circumstances (cleaned up)).

As in *Gomez-Jimenez*, the district court here made "abundantly clear," *id.*, that if the § 2B1.1(b)(12) enhancement was *not* properly applied to the defendants, it nevertheless would impose the same sentence, as necessary to account for the nature and circumstances of the offense under 18 U.S.C. § 3553(a), *see* S.J.A. 684.  The district court explained itself at length in its written opinion:  Whether or not the PPP and EIDL loans in question technically were authorized "in connection with" the President's COVID-19 Stafford Act declaration, they most definitely were intended to assist individuals and businesses "damaged by [that] national emergency or disaster."  S.J.A. 685.  Targeting such programs for fraud – potentially depriving actual disaster victims of access to a finite pool of funds – causes special and broader injuries, putting at "further risk of injury the already-injured party for whom the government assistance is intended."  *Id.*  Regardless of the regulatory

10

ins and outs of disaster loan authorizations, in other words, "[t]o consider a disaster as an opportunity to commit fraud reflects a heightened level of culpability." *Id.*

And for those reasons, had the district court taken this alternative approach, the defendants' sentences would have remained reasonable. Without the two-level enhancement, the defendants' advisory Guidelines range would have dropped from 63 to 78 months' imprisonment to 51 to 63 months. Redfern's 60-month sentence would be presumptively reasonable as within this hypothetical Guidelines range. *See United States v. Susi*, 674 F.3d 278, 289 (4th Cir. 2012). And while McMiller's 66-month sentence would represent a relatively small upward variance, the district court's explanation provides ample justification for such a sentence on the facts of this case. *Cf. United States v. Diosdado-Star*, 630 F.3d 359, 366–67 (4th Cir. 2011) (finding that imposition of an above-Guidelines sentence was reasonable based on the district court's full explanation of its decision under the § 3553(a) factors).

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

11