**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-4285**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

TERRY DAVID MCVEY,

        Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Parkersburg. Robert C. Chambers, Chief District Judge. (6:12-cr-00179-1)

Argued: January 30, 2014        Decided: April 23, 2014

Before WILKINSON, NIEMEYER, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Judge Duncan joined.

**ARGUED:** Jonathan D. Byrne, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Jennifer Lynn Rada, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee. **ON BRIEF:** Mary Lou Newberger, Federal Public Defender, George H. Lancaster, Jr., Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. R. Booth Goodwin II, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

NIEMEYER, Circuit Judge:

Terry David McVey pleaded guilty to knowingly possessing 300 to 600 images of child pornography, including images and videos of prepubescent minors, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). After applying several enhancements, including a two-level enhancement under U.S.S.G. § 2G2.2(b)(3)(F) for distribution of child pornography, and crediting McVey for acceptance of responsibility and cooperation with authorities, the district court entered a downward variance sentence of 78 months' imprisonment. McVey now challenges his distribution enhancement, arguing that his only documented instance of distribution "occurred more than two years prior to his offense of conviction" and thus was not relevant conduct under U.S.S.G. § 1B1.3.

We reject McVey's challenge, concluding that the district court did not clearly err in applying the enhancement, and affirm his sentence.

I

On December 12, 2010, McVey sent an email to an individual he believed to be the stepfather of three girls, ages 8, 11, and 14. The email recipient was actually an undercover police officer assigned to the Internet Crimes Against Children Task Force in Birmingham, Alabama. McVey and the undercover officer

2

communicated for several months about sexual acts that McVey wanted to perform with the daughters. At one point, the officer told McVey that the price for sexual intercourse with the two older daughters was $150 per hour per girl with a minimum two-hour charge, and McVey stated that he thought that price would be well worth it.

On February 4, 2011, McVey asked the undercover officer if he had videos of the three girls and, if so, how McVey could obtain them. The officer offered to sell McVey a DVD for $10. On May 31, 2011, the officer received (in his undercover post office box) an envelope containing a $10 bill with a return address for McVey's residence in Parkersburg, West Virginia. The officer prepared a DVD containing child pornography and mailed it to McVey at the address he gave. The DVD was delivered on July 28, 2011, and, later that day, police obtained and executed a federal search warrant for McVey's residence, seizing McVey's computer and several CDs. Soon afterward, McVey returned home and agreed to be interviewed. McVey admitted to purchasing the pornographic DVD from the undercover officer, explaining that he had been interested in having sex with the purported eight-year-old daughter, but that he could not afford the $1,000 fee.

McVey also admitted that he had possessed and distributed child pornography over the course of the previous ten years and

3

that, during that time, he had uploaded child pornography to various Yahoo! Groups on "at least six occasions."

The CDs seized from McVey's residence contained approximately fourteen image files and two video files, and the computer contained approximately seventeen image files and four videos. The images and videos included known child victims and prepubescent minors.

During the course of the investigation, detectives also learned of a "CyberTipline Report" from the National Center for Missing and Exploited Children, which indicated that McVey had previously uploaded a video to a child pornography website. The upload took place on December 31, 2008. A detective viewed the video and confirmed that it contained child pornography. That video, however, did not appear on the hard drive of McVey's computer. Although McVey did not specifically remember uploading the video, he explained that his hard drive had crashed in September 2010 and that he had lost all of its contents.

McVey was subsequently indicted on one count of knowingly possessing images and videos of child pornography on July 28, 2011, that had been shipped and transported in and affected interstate commerce, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). McVey pleaded guilty to the charge under a plea agreement, in which he accepted sentencing enhancements for

4

using a computer (U.S.S.G. § 2G2.2(b)(6)); for possessing images depicting prepubescent minors (U.S.S.G. § 2G2.2(b)(2)); and for possessing 300 to 600 images (U.S.S.G. § 2G2.2(b)(7)(C)). The agreement indicated a final offense level of 26 but noted that the sentencing court would not be bound by its terms.

In the presentence investigation report, the probation officer recommended applying the enhancements accepted by McVey in the plea agreement, as well as two additional enhancements -- one for possessing images portraying sadistic or masochistic conduct (U.S.S.G. § 2G2.2(b)(4)) and one for distribution of child pornography (U.S.S.G. § 2G2.2(b)(3)(F)). The probation officer also recommended reductions for acceptance of responsibility and cooperation with authorities.

At the sentencing hearing, McVey contested the enhancement for distribution of child pornography under U.S.S.G. § 2G2.2(b)(3)(F), arguing that his distribution activities were too remote in time and did not amount to "relevant conduct" to his possession offense. He argued that the only documented instance of his distribution was on December 31, 2008, which was 23 months before McVey first contacted the undercover police officer and over two years before the offense of conviction for possession. The government, however, noted that McVey had also admitted to uploading child pornography on at least six different occasions.

The district court overruled McVey's objection.  While the court acknowledged that there had been "a significant passage of time" between the documented December 2008 distribution activity and the July 2011 offense of conviction for possession, it nonetheless saw the distribution and the possession as "the same crime, the same sort of activity, the same sort of conduct continuing over the entire period."  Ultimately, the court applied five enhancements -- the three that McVey had accepted in his plea agreement and the two additional ones recommended by the probation officer.  It also credited McVey with acceptance of responsibility and cooperation with authorities, thus reaching an overall offense level of 29.  Together with McVey's criminal history category of I, the resulting recommended Guidelines sentencing range was 87 to 108 months' imprisonment.  For various reasons not related to this appeal, the court entered a downward variance sentence of 78 months' imprisonment, followed by 15 years of supervised release.

McVey noticed this appeal, challenging only the two-level enhancement under U.S.S.G. § 2G2.2(b)(3)(F) for the distribution of child pornography.

II

As an initial matter, McVey contends that we should review the district court's application of the distribution enhancement

de novo. The government responds that the court's ruling that the prior distribution activity was relevant conduct was a factual finding that we review for clear error.

The resolution of the parties' difference on the standard of review depends on whether the issue "turns primarily on a factual determination," in which case we should review the district court's findings for clear error or whether it "turns primarily on the legal interpretation of a guideline term," in which case our review "moves closer to de novo review." United States v. Steffen, 741 F.3d 411, 414 (4th Cir. 2013) (quoting United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989)). Consequently, we must focus more closely on the nature of the district court's decision.

Sentencing under the Sentencing Guidelines involves consideration of the actual conduct in which a defendant engaged, "regardless of the charges for which he was indicted or convicted." U.S.S.G. § 1A1.4(a); see also id. § 1B1.3(a). Thus, despite the limited scope of conduct for which the defendant was convicted, he may nonetheless be sentenced more broadly for relevant conduct -- i.e., the conduct of other offenses insofar as they were "part of the same course of conduct . . . as the offense of conviction." Id. § 1B1.3(a)(2). The Application Notes to § 1B1.3 instruct that the "[f]actors that are appropriate to the determination of whether offenses

7

are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." Id. § 1B1.3 cmt. n.9(B) (emphasis added); see also United States v. Mullins, 971 F.2d 1138, 1144 (4th Cir. 1992) (identifying "similarity, regularity, and temporal proximity" as the "significant elements" in the course-of-conduct inquiry). "When one of the above factors is absent, a stronger presence of at least one of the other factors is required." U.S.S.G. § 1B1.3 cmt. n.9(B); see also Mullins, 971 F.2d at 1144.

When a district court interprets the meaning and legal components of the term "relevant conduct," it makes a legal determination that we review de novo. See, e.g., United States v. Fullilove, 388 F.3d 104, 106 (4th Cir. 2004). But the application of the relevant conduct standard typically involves consideration of factual circumstances, such as whether acts or omissions are sufficiently similar; whether they are sufficiently regular; whether they are sufficiently close in time; and whether, when one factor is particularly weak or even lacking, another factor compensates to satisfy the factual requirements of relevant conduct. Such analysis constitutes factfinding that we review for clear error.

In this case, McVey does not contend that the district court applied the incorrect legal rule. Rather, his challenge centers on the factual analysis the district court conducted in applying the relevant conduct Guideline. The court's application of U.S.S.G. § 1B1.3 depended on an evaluation and weighing of the factual details, even though the details themselves may have been undisputed. As such, we review the court's decision for clear error.

This conclusion is consistent with our decision in United States v. Pauley, 289 F.3d 254 (4th Cir. 2002), as well as the decisions of other courts. In Pauley, the district court found that a series of four thefts were sufficiently connected to constitute relevant conduct for purposes of a sentencing enhancement, and we reviewed the court's decision for clear error because the inquiry was primarily factual, turning on the purpose, timing, and modus operandi of the thefts, and the weight that should be attached to those facts in the relevant conduct analysis. See id. at 259-60; see also United States v. Hodge, 354 F.3d 305, 313 (4th Cir. 2004) ("We review an application of [the relevant conduct] test . . . for clear error"). Other courts have reached similar conclusions. See United States v. Pica, 692 F.3d 79, 88 (2d Cir. 2012) ("Findings of relevant conduct are reviewed for clear error"); United States v. Boroughf, 649 F.3d 887, 890 (8th Cir. 2011) ("We

9

review a district court's relevant-conduct determination for clear error, remembering that such a determination is fact-intensive and 'well within the district court's sentencing expertise and greater familiarity with the factual record'" (quoting United States v. Stone, 325 F.3d 1030, 1031 (8th Cir. 2003))); United States v. West, 643 F.3d 102, 105 (3d Cir. 2011) ("We also review for clear error the District Court's determination of what constitutes 'relevant conduct' for the purposes of sentencing"); United States v. Salem, 597 F.3d 877, 884 (7th Cir. 2010) ("[W]e review the district court's relevant conduct determinations for clear error"); United States v. Mann, 493 F.3d 484, 497 (5th Cir. 2007) ("A district court's determination of what constitutes relevant conduct is reviewed for clear error"). But see United States v. Smith, 705 F.3d 1268, 1274 (10th Cir. 2013) ("We review the factual findings supporting this determination for clear error, but review the ultimate determination of relevant conduct de novo"); United States v. McCrimmon, 362 F.3d 725, 728 (11th Cir. 2004) ("Although findings as to the amount of loss from a money laundering offense are reviewed for clear error, whether the district court misapplied U.S.S.G. § 1B1.3 is a purely legal question that we review de novo").

10

On the merits, McVey contends that the district court erred -- or, necessarily, that the court clearly erred -- by applying the enhancement for distribution of child pornography. He argues that his "uploading of child pornography years before his offense of conviction is not relevant conduct for that offense," reasoning that "[t]hat prior conduct is temporally distant, was not engaged in with any regularity, and is not sufficiently similar to the offense of conviction."

The government argues in response that the "substantial similarity between the distribution and the possession" and the "number of times [McVey] engaged in distribution" support the district court's finding that McVey's "prior distribution was relevant conduct for purposes of determining his advisory Guideline range." Alternatively, the government argues that any error on the part of the district court was harmless.

McVey pleaded guilty to possession of child pornography under 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2), and the base offense level for his sentence was therefore governed by U.S.S.G. § 2G2.2(a)(1). Because the base offense level was subject to an enhancement for distribution, as stated in § 2G2.2(b)(3)(F), we must determine whether the district court clearly erred in finding that McVey's distribution conduct was

part of the same "course of conduct . . . as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

The concept of "same course of conduct" does not require that acts be connected together by common participants or by a singular overall scheme. Rather, it requires only "that the defendant [be] engaged in an identifiable pattern of certain criminal activity." Hodge, 354 F.3d at 312. To determine if McVey's distribution activities were sufficiently connected or related to his possession offense to be part of the same course of conduct, we evaluate, as noted above, the similarity of the offenses, their regularity, and the time interval between them. See U.S.S.G. § 1B1.3 cmt. n.9(B); Mullins, 971 F.2d at 1144. And when one of those factors is absent, a stronger presence of another must exist. Id.

Focusing on his December 31, 2008 upload of child pornography, McVey argues that his prior distribution conduct "did not occur close in time with his offense" -- i.e., his July 28, 2011 possession of child pornography. Taking that proposition alone, we acknowledge that the roughly two-and-one-half-year interval between the two offenses does exceed the six-month interval that we found too long in Mullins. See 971 F.2d at 1144. And indeed, the district court acknowledged that the gap between those offenses was "significant." But the court had other evidence to support its conclusion that McVey's

12

distribution of child pornography was part of the same course of conduct as his July 2011 possession of child pornography.

First, McVey admitted on the day of his arrest that he had possessed and distributed child pornography during the last ten years. This admission alone strongly suggests a single course of conduct. McVey further admitted to distributing child pornography to various Yahoo! Groups on at least six occasions, and the CyberTipline Report documents him uploading child pornography to yet a different website on an additional occasion. Moreover, during conversations from late 2010 to early 2011, McVey actively solicited images of prepubescent children with whom he wished to have sex, constituting a further extension of his course of conduct. Relying on all of these facts, the district court found that McVey's distribution and possession of child pornography were closely related. Indeed, the court found that they were "the same crime, the same sort of activity, the same sort of conduct continuing over the entire period." We conclude that the court's factual finding was supported by the record and therefore was not clearly erroneous.

Bolstering the district court's factual conclusion, we note that, as a matter of logic, possession and distribution of child pornography are tightly connected. Possession is a necessary prerequisite for distribution, which means that every time McVey uploaded pornographic material, he also possessed that

13

pornographic material. This perfect overlap suggests a substantial similarity between McVey's distribution activities and his possession of child pornography. Moreover, the Third Circuit has observed that possession and distribution of child pornography share many characteristics, as the activities have a "commonality of purpose in the [defendant's] prurient interest[s]." United States v. Sullivan, 414 F. App'x 477, 480 (3d Cir. 2011). They also share a common offender (McVey) and a common modus operandi (use of a computer), reinforcing the conclusion that possession and distribution are highly similar. See United States v Cote, 482 F. App'x 373, 375 (11th Cir. 2011) (per curiam) ("Here, Cote's possession of over 2,700 images of child pornography on his computer and his sharing of almost 700 of these images . . . using the same peer-to-peer file sharing program are relevant conduct . . . . These acts are similar in degree to the charged offense and are substantially connected to the charged offense given that one must first possess child pornography before one can transport it"); Sullivan, 414 F. App'x at 480-81 (finding that possession of pornographic images was related to the offense of distribution of such images in part because of the similarity of the two activities); United States v. Gerow, 349 F. App'x 625, 627 (2d Cir. 2009) (per curiam) ("[T]here was sufficient evidence from which the District Court could conclude that defendant's possession of

14

child pornography was part of a common scheme or plan, or part of the same course of conduct, as his distribution of the same"). McVey's admission that he had possessed and distributed child pornography for the previous 10 years appears to confirm these courts' conclusions.

McVey nonetheless relies on United States v. Sykes, 7 F.3d 1331 (7th Cir. 1993), to argue that his distribution was not sufficiently regular to support a finding that it was connected to his ongoing possession. In Sykes, the court held that a defendant who had committed credit card fraud four times over the course of three years had not acted with regularity. Id. at 1337. But the circumstances in Sykes were substantially different from those presented in this case. The Sykes court concluded that the credit card fraud consisted of four distinct offenses that did not occur at any fixed or certain intervals or in accordance with any consistent or periodical rule or practice and therefore were not connected. In this case, however, all of McVey's distribution activities were connected by his ongoing possession of child pornography.

In sum, where an individual continually possesses child pornography over a period of ten years and admits that he distributed that pornography over the same period, it is reasonable for a district court to conclude that seven specific distributions during that period are closely connected with the

15

ongoing offense of possession.  Accordingly, we conclude that the district court in this case did not clearly err in finding that McVey's distribution activity was part of the same course of conduct as his offense of conviction.

The judgment of the district court is

AFFIRMED.