**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 23-4607**

─────────────

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

STEPHEN SIMMONS,

        Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Southern District of West Virginia at Huntington.  Robert C. Chambers, District Judge.  (3:23-cr-00021-1)

─────────────

Argued:  September 27, 2024                         Decided:  July 7, 2025

─────────────

Before GREGORY, QUATTLEBAUM and BERNER, Circuit Judges.

─────────────

Vacated and remanded by published opinion.  Judge Berner wrote the opinion, in which Judge Gregory and Judge Quattlebaum joined.

─────────────

**ARGUED:**  Lex A. Coleman, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  Troy Daniel Adams, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.  **ON BRIEF:**  Wesley P. Page, Federal Public Defender, Jonathan D. Byrne, Appellate Counsel, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  William S. Thompson, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

BERNER, Circuit Judge:

Stephen Simmons pled guilty to violating the National Firearms Act by possessing an unregistered "auto sear," a device that enables semi-automatic firearms to fire at the same rate as machineguns. On the day of his offense, Simmons tested positive for methamphetamine and marijuana. Though Simmons was not prosecuted for any drug-related crime, the district court applied multiple sentencing enhancements that penalized Simmons for possessing the unregistered auto sear—as well as numerous additional auto sears, silencers, and firearms—as an unlawful user of controlled substances. Unlawful users of controlled substances are prohibited by statute from possessing firearms.

Simmons asserts that the application of these sentencing enhancements violated his Second Amendment rights. He argues that unlawful users of controlled substances maintain the constitutional right to keep and bear arms, and that the Government violated the Second Amendment by penalizing him for exercising this right. The sentencing enhancements Simmons challenges fall into two categories: some concern his possession of items prohibited under the National Firearms Act (the unregistered auto sears and silencers), whereas others concern his possession of firearms that are not covered by the Act. In addition to his Second Amendment challenge, Simmons asserts that "unlawful user of . . . any controlled substance" is an impermissibly vague category, in violation of the Due Process Clause.

We reject both constitutional arguments. Because Simmons concedes that he has no constitutional right to possess auto sears or silencers, he cannot sustain a Second Amendment challenge. Simmons's vagueness claim also fails. Simmons was, without

2

question, an "unlawful user" of controlled substances at the time of his arrest. As a result, he cannot challenge that phrase as unconstitutionally vague.

Though we hold that Simmons's constitutional challenges lack merit, we agree with his contention that he was sentenced under an improper Sentencing Guidelines range. The district court erred in applying sentencing enhancements that penalized Simmons for possessing ordinary firearms not covered by the National Firearms Act, as those firearms were not relevant to the offense for which he was convicted. We thus vacate Simmons's sentence and remand for resentencing.

## I.      Background

In January 2023, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) executed a search warrant on Stephen Simmons's home. There they discovered 10 unregistered items covered by the National Firearms Act (NFA Firearms): four auto sears and six silencers.[1] The ATF agents also found 33 firearms not covered by the NFA (Non-NFA Firearms), as well as evidence of unlawful drug use.

---

[1] Under the National Firearms Act, the term "firearm" includes, among other items, "a machinegun" and "any silencer." 26 U.S.C. § 5845(a)(6), (7). The Act further defines "machinegun" to include "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." *Id.* § 5845(b). Simmons does not challenge the Government's classification of auto sears as "machineguns." Two of the four discovered auto sears were designed to be affixed to rifles. The other two, commonly referred to as "Glock Switches," were designed to be affixed to Glock handguns.

3

The ATF agents arrested Simmons. That same day, Simmons admitted that he had been using methamphetamine and Adderall during the prior two to three months. He also tested positive for methamphetamine and marijuana. Methamphetamine, marijuana, and Adderall are all controlled substances.

Simmons pled guilty to a single count of possessing an unregistered machinegun, in violation of the National Firearms Act, 26 U.S.C. §§ 5861(d) and 5871. The charged item was one of the four auto sears. Simmons was not charged with any drug-related offenses, nor was he charged with possessing a firearm as a "prohibited person," namely, an unlawful user of controlled substances. *See* 18 U.S.C. § 922(g)(3).

## A. Simmons's Sentence

Simmons was subject to a higher advisory sentencing range under the United States Sentencing Guidelines because of his status as an unlawful user of controlled substances. The district court calculated Simmons's total offense level as 25 and his criminal history score as I, resulting in an advisory Sentencing Guidelines range of 57 to 71 months' imprisonment. After applying a downward variance, the district court sentenced Simmons to 36 months in prison. Simmons contests the district court's application of three separate Guidelines provisions that factored into his advisory Sentencing Guidelines range: (1) an enhancement that penalizes the possession of NFA Firearms by "prohibited persons"; (2) an enhancement that penalizes the unlawful possession of multiple firearms; and (3) an enhancement that penalizes the possession of stolen firearms.

In calculating Simmons's base offense level, the district court first applied an enhancement that penalized Simmons for being a "prohibited person" at the time of the

4

offense, U.S.S.G. § 2K2.1(a)(4)(B)(ii)(I) ("the (a)(4)(B) Guideline"). Possession of an unregistered NFA Firearm yields a base offense level of 18. *See id.* § 2K2.1(a)(5). If the defendant was a "prohibited person" at the time of the offense, however, the offense level increases to 20. Because the district court determined that Simmons's unlawful use of controlled substances made him a "prohibited person" under the (a)(4)(B) Guideline, the district court set Simmons's base offense level at 20.

The district court next imposed on Simmons a sentencing enhancement that penalized him for unlawfully possessing *multiple* firearms at the time of his arrest.[2] Under that enhancement, U.S.S.G. § 2K2.1(b)(1) ("the (b)(1) Enhancement"), a defendant's offense level is increased "[i]f *the offense involved* three or more firearms." *Id.* § 2K2.1(b)(1) (emphasis added). The (b)(1) Enhancement sets a schedule of incremental increases that correspond to the total number of firearms involved in the offense. *Id.* § 2K2.1(b)(1)(A)-(E). If the offense involved three to seven firearms, for example, the offense level increases by two. *Id.* § 2K2.1(b)(1)(A). If eight to twenty-four firearms were involved, the offense level increases by four. *Id.* § 2K2.1(b)(1)(B). In calculating the total number of firearms for purposes of the (b)(1) Enhancement, courts are instructed to count

---

[2] Under the relevant Sentencing Guideline, U.S.S.G. § 2K2.1(b)(1), "firearm" is defined in accordance with 18 U.S.C. § 921(a)(3) as: "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." Simmons does not contest whether auto sears are properly considered firearms within the meaning of 18 U.S.C. § 921(a)(3).

only those firearms whose possession was both (1) unlawful *and* (2) relevant to the offense of conviction. U.S.S.G §§ 2K2.1 cmt. n.5, 1B1.1, cmt. n.1(I).

In applying the (b)(1) Enhancement, the district court counted all 43 firearms found in Simmons's home at the time of his arrest. This resulted in a six-point offense level increase. Because Simmons was an unlawful user of controlled substances, it was unlawful for him to possess any firearm. *See* 18 U.S.C. § 922(g)(3) (Section 922(g)(3)). Thus, all 43 firearms satisfied the first prong of the (b)(1) Enhancement test. The district court did not, however, separately analyze the second prong—whether Simmons's possession of each of the 43 firearms was *relevant* to his NFA conviction.

Third, the district court applied a sentencing enhancement that increases a defendant's offense level by two points if he is found to be in possession of a stolen firearm, U.S.S.G. § 2K2.1(b)(4)(A) ("the (b)(4)(A) Enhancement"). Like the (b)(1) Enhancement, the (b)(4)(A) Enhancement applies only to firearms found in a defendant's possession that are relevant to the offense of conviction. *See United States v. Cole*, 525 F.3d 656, 660 (8th Cir. 2008); *United States v. Roxborough*, 99 F.3d 212, 214–16 (6th Cir. 1996); *United States v. Gonzales*, 996 F.2d 88, 92 n.6 (5th Cir. 1993).

## II.    Analysis

Simmons argues that unlawful users of controlled substances maintain the constitutional right to keep and bear arms. He asserts that under the test articulated by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Second Amendment prohibits the imposition of any sentencing enhancement that penalizes him

6

for exercising that right. *See* 597 U.S. 1, 17 (2022). Simmons also contends that the phrase "unlawful user of . . . any controlled substance" in Section 922(g)(3) is unconstitutionally vague, in violation of the Due Process Clause of the Fifth Amendment. We take each argument in turn.

## A. The (a)(4)(B) Guideline

### 1. *Second Amendment Challenge*

Simmons mounts a Second Amendment challenge to the district court's application of the (a)(4)(B) Guideline, which penalizes "prohibited persons" for offenses involving NFA Firearms. Because Simmons misapprehends the relationship between the (a)(4)(B) Guideline and Section 922(g)(3), however, his challenge takes a circuitous route. Simmons contests the imposition of the (a)(4)(B) Guideline by arguing that Section 922(g)(3), which the (a)(4)(B) Guideline incorporates by reference, violates the Second Amendment under the test articulated in *Bruen*. The (a)(4)(B) Guideline defines "prohibited person" as "any person described in 18 U.S.C. § 922(g)." U.S.S.G. § 2K2.1 cmt. n.3. Under Section 922(g)(3), "prohibited person" includes any person "who is an unlawful user of . . . any controlled substance." Simmons challenges this Section 922(g)(3) restriction as inconsistent with the Second Amendment, and he argues that if we find Section 922(g)(3) unconstitutional, he would no longer be considered a "prohibited person" under the (a)(4)(B) Guideline. This argument confuses the relationship between the two provisions.

As this court has explained, Simmons would continue to be a "prohibited person" within the meaning of the (a)(4)(B) Guideline regardless of whether Section 922(g)(3) is found to violate the Second Amendment. *See United States v. Myers*, 553 F.3d 328, 330-

7

31 (4th Cir. 2009). That is because the definition of "prohibited person" for purposes of the (a)(4)(B) Guideline is determined on the basis of the referenced statutory definition *at the time* the relevant provision of the Sentencing Guidelines was enacted. *See id.* ("Applying this principle requires us to read the [ ] enhancement as if it had reproduced in the text of the enhancement itself the list of qualifying weapons set out in [the statute].") Thus, unless and until a new Sentencing Guidelines Manual takes effect, the definition of "prohibited person" for purpose of the (a)(4)(B) Guideline includes "unlawful user[s] . . . of controlled substance[s]" such as Simmons regardless of the constitutional viability of Section 922(g)(3).

Simmons's challenge cannot succeed, then, unless the imposition of the (a)(4)(B) Guideline itself—which applies solely to prohibited persons in possession of *NFA Firearms*—violated the Second Amendment as applied to Simmons. Yet Simmons concedes that the Second Amendment does not protect *anyone*'s right to possess an NFA Firearm. As a result, he has foreclosed any Second Amendment challenge to the (a)(4)(B) Guideline. The (a)(4)(B) Guideline penalized Simmons's possession of auto sears and silencers—NFA Firearms that, by Simmons's own admission, fall outside the ambit of the Second Amendment's protection. The Second Amendment cannot shield Simmons from penalties for firearms that he concededly had no constitutional right to possess.

Even if Simmons had not made this concession, any Second Amendment challenge to the (a)(4)(B) Guideline (and by extension, the National Firearms Act) would need to confront the Supreme Court's recognition that "the Second Amendment right, whatever its nature, extends only to certain types of weapons." *District of Columbia v. Heller*, 554 U.S.

8

570, 623 (2008) (discussing *United States v. Miller*, 307 U.S. 174 (1939)). The Court in *Heller* reiterated that arms in common use for a lawful purpose enjoy Second Amendment protection, but "dangerous and unusual weapons" do not. *Heller*, 554 U.S. at 627. Relevant here, "[w]e know from Supreme Court precedent that . . . machineguns are not in common use for a lawful purpose." *United States v. Price*, 111 F.4th 392, 403 (4th Cir. 2024). As mentioned, an auto sear—the NFA Firearm Simmons was charged with possessing—is a part that converts a semiautomatic weapon into a machinegun. Simmons does not challenge the Government's classification of auto sears as machineguns, and unless auto sears are entitled to Second Amendment protection that machineguns lack, *Miller* and *Heller* would foreclose any constitutional challenge to his possession of auto sears. Further, this court in an unpublished opinion recently held that silencers—the other NFA Firearms whose possession rendered the (a)(4)(B) Guideline applicable to Simmons—are not "arms" protected by the Second Amendment. *United States v. Saleem*, No. 23-4693, 2024 WL 5084523, at *2 (4th Cir. Dec. 12, 2024) ("While a silencer may be a firearm accessory, it is not a 'bearable arm' that is capable of casting a bullet. Moreover, . . . it fails to serve a core purpose in the arm's function."). Two of our sister circuits have reached the same conclusion. *See United States v. Peterson*, 127 F.4th 941, 947 (5th Cir. 2025); *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018). However, since no party presented this issue to us in their briefs, oral arguments, or in Rule 28 letters, we do not reach it.

In sum, Simmons has failed to sustain a Second Amendment challenge to the (a)(4)(B) Guideline. The constitutionality of Section 922(g)(3), which Simmons contests, has no bearing on whether the (a)(4)(B) Guideline is constitutional or applicable to

9

Simmons. The (a)(4)(B) Guideline solely penalized Simmons's possession of NFA Firearms—specifically, auto sears and silencers. Because Simmons concedes that he has no Second Amendment right to possess NFA Firearms, we reject his Second Amendment challenge to the imposition of the (a)(4)(B) Guideline.

### 2. *Vagueness challenge*

Simmons also argues that the application of the (a)(4)(B) Guideline violated his rights under the Due Process Clause of the Fifth Amendment. He contends that the phrase "unlawful user of . . . controlled substance[s]" in Section 922(g)(3)—which, as we explained above, is incorporated by reference in the (a)(4)(B) Guideline—is unconstitutionally vague.

This is not the first time this court has been asked to rule on the question of whether Section 922(g)(3) is void for vagueness. In *United States v. Claybrooks*, a case involving a similar challenge, this court explained that "when a defendant's conduct falls squarely within the confines of the disputed statute, he abandons the right to challenge that statute for vagueness." 90 F.4th 248, 255 (4th Cir. 2024) (citing *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18–19 (2010) (stating that a defendant who "engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others")).

Like the defendant in *Claybrooks*, Simmons falls "squarely within" the definition of "unlawful user of . . . controlled substance[s]." *Id.* at 255. Simmons admitted that he had been using Adderall and methamphetamine for several months prior to his arrest. On the day of his arrest, he tested positive for methamphetamine and marijuana. On the basis of

10

these facts, there can be no doubt that Simmons was an "unlawful user of . . . controlled substance[s]" at the time of his offense. Accordingly, his vagueness challenge to Section 922(g)(3) is foreclosed.

## B.  Sentencing Enhancements

Simmons also argues that the application of the (b)(1) and (b)(4)(A) Enhancements violated his rights under the Second Amendment. The (b)(1) Enhancement penalizes the unlawful possession of *multiple* firearms; and the (b)(4)(A) Enhancement penalizes the possession of *stolen* firearms. Because we conclude that neither enhancement is applicable to Simmons, we need not reach the question of their constitutionality. Constitutional avoidance principles restrain us from resolving constitutional challenges when a case can be resolved on other grounds. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). This is such a case.

In applying the (b)(1) and (b)(4)(A) Enhancements, the district court penalized Simmons for unlawfully possessing firearms that played no role in the offense for which he was convicted. Simmons was convicted of a single count of possessing an unregistered NFA Firearm. In sentencing Simmons, however, the district court counted all firearms found in Simmons's home at the time of his arrest toward the total number of firearms for the purpose of the (b)(1) Enhancement: the 33 Non-NFA Firearms and the 10 NFA firearms. [J.A. 222]. The stolen firearm that formed the basis of the (b)(4)(A) Enhancement was also a Non-NFA Firearm unrelated to the offense of conviction. The district court erred in applying these enhancements.

1. *The (b)(1) Enhancement*

11

The government bears the burden of establishing by a preponderance of the evidence that a sentencing enhancement is applicable. *United States v. Henderson*, 88 F.4th 534, 536 (4th Cir. 2023). In evaluating a district court's application of a sentencing enhancement, our standard of review "depends on whether a given dispute is mostly legal or factual." *United States v. Pettus*, 90 F.4th 282, 285 (4th Cir. 2024). "If the issue on appeal turns primarily on a factual determination, we apply the 'clearly erroneous' standard. In contrast, if the issue turns primarily on the legal interpretation of a [G]uideline term, the standard moves closer to de novo review." *Id.* (internal quotation marks and citations omitted).

In calculating the total number of firearms under the (b)(1) Enhancement, courts are instructed to count *only* those firearms whose possession was both (1) unlawful and (2) relevant to the offense of conviction, U.S.S.G. §§ 2K2.1 cmt. n.5; 1B1.1, cmt. n.1(I).[3] The (b)(1) Enhancement provides that "[i]f *the offense involved* three or more firearms, increase as follows: 25-99 [firearms] add 6 [points]." *Id.* § 2K2.1(b)(1)(C) (emphasis added). Courts are instructed to "count only those firearms that were . . . unlawfully possessed." *Id.* § 2K2.1 cmt. n.5. The firearms must also have been part of "the offense of conviction" or "*relevant conduct*." *Id.* § 1B1.1, cmt. n.1(I) (emphasis added). Accordingly, a firearm should not be counted toward the (b)(1) Enhancement unless its possession was *relevant* to the offense of conviction, regardless of whether its possession was lawful.

---

[3] We defer to Guidelines commentary only where a Guideline is ambiguous. *See United States v. Mitchell*, 120 F.4th 1233, 1239 (4th Cir. 2024).

12

We review *de novo* a district court's interpretation of "the meaning and legal components of the term 'relevant conduct.'" *United States v. McVey*, 752 F.3d 606, 610 (4th Cir. 2014). A firearm is not "relevant to the offense of conviction" for the purpose of the (b)(1) Enhancement unless it was part of "the *same course of conduct or common scheme or plan* as the offense of conviction." U.S.S.G. § 1B1.3(a)(2) (emphasis added). "[O]ffenses may qualify as the 'same course of conduct' 'if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses.'" *United States v. McDonald*, 28 F.4th 553, 563–64 (4th Cir. 2022) (quoting U.S.S.G. § 1B1.3 cmt. n.5(B)(ii)). In determining whether a sufficient connection exists, a court should evaluate "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." U.S.S.G. § 1B1.3 cmt. n.5(B)(ii). "When one of the above factors is absent, a stronger presence of at least one of the other factors is required." *McDonald*, 28 F.4th at 564 (quoting U.S.S.G. § 1B1.3 cmt. n.5(B)(ii)).

In this case, "[b]ecause the facts . . . are undisputed, the only question before us is one of Guidelines application, a question on which our standard of review approaches de novo." *United States v. Fullilove*, 388 F.3d 104, 106 (4th Cir. 2004). District courts often conduct factually-intensive analysis in rendering a "relevant conduct" determination. *See McVey*, 752 F.3d at 610 ("[T]he application of the relevant conduct standard typically involves consideration of factual circumstances," including "whether acts or omissions are sufficiently similar; whether they are sufficiently regular; whether they are sufficiently close in time; and whether, when one factor is particularly weak or even lacking, another

13

factor compensates . . . . Such analysis constitutes factfinding that we review for clear error.") In concluding that Simmons's possession of Non-NFA Firearms was "relevant conduct" in relation to his National Firearms Act offense, however, the district court did not undertake this analysis. Instead, it explained only that "I don't think it's a stretch at all to conclude that with respect to people who violate gun laws, there is increased culpability and greater risk to the public if that person is also engaged in illegal drug activity." J.A. 79. Because this cursory explanation falls short of the analysis required by the Guidelines, our standard of review is *de novo* rather than clear error. *See Fullilove*, 388 F.3d at 106.

Simmons's possession of Non-NFA Firearms was not "relevant" to his conviction for possessing an unregistered NFA Firearm. Regardless of whether Simmons's possession of the Non-NFA Firearms was lawful, those firearms were not part of "the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). The Government presented no evidence that Simmons's drug use, which made it unlawful for him to possess the Non-NFA Firearms under Section 922(g)(3), bore any "relationship in time, purpose, or mode" to his violation of the National Firearms Act. *See United States v. Vargem*, 747 F.3d 724, 732 (9th Cir. 2014).

In considering the "degree of similarity of the offenses," U.S.S.G. § 1B1.3 cmt. n.5(B)(ii), we conclude that the offense of possessing a Non-NFA Firearm as a prohibited person is distinct from the offense of possessing an NFA Firearm. Whereas the former is unlawful because of the status of the offender, the latter is unlawful because of the characteristics of the weapon. The Ninth Circuit explained this distinction in *Vargem*. There, the Ninth Circuit held that the defendant's possession of Non-NFA Firearms—

14

which was unlawful only because the defendant was temporarily subject to a domestic violence restraining order—was not "relevant" to his conviction for possessing an unregistered NFA Firearm. *Id.* at 730. As the court explained, the defendant's conduct could not be classified as a "single episode, spree, or ongoing series of offenses." *Id.* at 732. "When those otherwise-lawful weapons were rendered suddenly unlawful by the [restraining order], there was no common scheme or plan to possess all 28 weapons unlawfully." *Id.* at 731–32.

The district court misapplied the (b)(1) Enhancement. Weighing the "degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses" yields the conclusion that the offenses were not sufficiently related. U.S.S.G. § 1B1.3 cmt. n.5(B)(ii). Because the Government did not meet its burden of showing that Simmons's drug use was part of the "same course of conduct or common plan as the offense of conviction"—possessing an unregistered auto sear—only the NFA Firearms found in Simmons's possession should have been counted toward the (b)(1) Enhancement. On remand, the district court must reapply the (b)(1) Enhancement without consideration of the Non-NFA Firearms found in Simmons's possession. Because we vacate the district court's application of the (b)(1) Enhancement to Simmons's sentence, we need not reach his constitutional challenge to this enhancement.

### 2. *The (b)(4)(A) Enhancement*

The district court similarly erred in applying the (b)(4)(A) Enhancement. Here again, the Government failed to meet its burden of showing that the stolen firearm, a Non-NFA Firearm, was relevant to Simmons's conviction. Like the (b)(1) Enhancement, the

15

(b)(4)(A) Enhancement applies only to conduct that is both unlawful *and* related to the offense of conviction. The (b)(4)(A) Enhancement does not apply to firearms that are not sufficiently connected to the offense for which the defendant was convicted. *See Cole*, 525 F.3d at 660; *Gonzales*, 996 F.2d at 92 n.6; *Roxborough*, 99 F.3d at 214–16. The "relevant conduct" analysis for the (b)(4)(A) Enhancement is no less demanding than the "relevant conduct" analysis for the (b)(1) Enhancement. Yet the Government provided no evidence that the stolen firearm found in Simmons's possession was in any way connected to his National Firearms Act offense. As a result, the district court should not have applied this enhancement.

## C.  Harmless Error

The Government argues that, even if erroneous, the district court's application of the challenged Guidelines provisions was harmless. The government bears the burden of establishing that a sentencing calculation error was harmless. *United States v. Robinson*, 460 F.3d 550, 557 (4th Cir. 2006). Because the district court applied a significant downward variance from Simmons's advisory Sentencing Guidelines range, the Government contends that any error in the district court's calculation was inconsequential.

The district court calculated Simmons's total offense level as 25. It reached this total by applying the (a)(4)(B) Guideline and the (b)(1) and (b)(4)(A) Enhancements. This offense level, combined with Simmons's criminal history score, resulted in an advisory Guidelines range of 57-71 months' imprisonment. Applying a downward variance, the district court sentenced Simmons to 36 months' imprisonment. On remand, when the district court properly applies the (b)(1) Enhancement and no longer applies the (b)(4)(A)

16

Enhancement, Simmons's base offense level could be as low as 19. This corresponds to a recommended Guidance range of 30-37 months.

Although Simmons's current sentence of 36 months' imprisonment falls within this 30-37 months Guidelines range, we are still required to vacate and remand for resentencing. That is because when "a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016). This conclusion "follows from the essential framework the Guidelines establish for sentencing proceedings" as "the sentencing court's starting point and . . . initial benchmark." *Id.* (internal citation omitted). Had Simmons's Guidelines range been properly calculated at 30-37 months, we cannot divine whether the district court would have sentenced Simmons at the high-end of that range. On remand, the district court may well apply a downward variance, as it did at the initial sentencing.

Because the record does not provide us "with knowledge that the district court would have reached the same result even if it had decided the [G]uidelines issue the other way," we cannot find the error was harmless. *United States v. Montes-Flores*, 736 F.3d 357, 370 (4th Cir. 2013) (alteration in original) (internal quotation omitted). The Government failed to point to a single statement at sentencing indicating that the district court would have imposed the same sentence if it had correctly applied the (b)(1) Enhancement and not applied the (b)(4)(A) Enhancement. "The standard for

17

harmlessness—knowledge of an identical outcome—is a high bar, and in this situation we are not so omniscient as to possess the requisite knowledge." *Id.* at 371.

### III.    Conclusion

For the reasons set forth above, we reject Simmons's challenge to the district court's application of the (a)(4)(B) Guideline. Because the district court incorrectly applied the (b)(1) Enhancement and should not have applied (b)(4)(A) Enhancement, however, we vacate Simmons's sentence and remand for resentencing under the appropriate Guidelines range.

*VACATED AND REMANDED*