**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-14058

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

MAXON ALSENAT,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:23-cr-60209-DSL-1

————————————

Before WILLIAM PRYOR, Chief Judge, and BRASHER and ABUDU, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether the Second Amendment protects the possession of machineguns. *See* 18 U.S.C. § 922(o)(1). A grand jury indicted Maxon Alsenat for knowingly

possessing a machinegun conversion device. After the district court denied his motion to dismiss the indictment, Alsenat pleaded guilty. He renews his challenge to the constitutionality of section 922(o) on appeal. Because machineguns are not protected by the Second Amendment as weapons in common use for lawful purposes, we affirm.

## I. BACKGROUND

A grand jury indicted Maxon Alsenat for possession of a machinegun. *See* 18 U.S.C. § 922(o)(1). The indictment alleged that Alsenat knowingly possessed a machinegun conversion device, which meets the statutory definition of a machinegun. *See id.* § 921(a)(24); 26 U.S.C. § 5845(b). Alsenat moved to dismiss the indictment on the grounds that section 922(o)(1) violates the Second Amendment as applied to adult citizens with no felony convictions.

The district court denied Alsenat's motion to dismiss. It ruled that machineguns are not in common use and are dangerous and unusual. Alternatively, it ruled that machinegun conversion devices possessed without a separate firearm are "accessories" or "accoutrements" and not "Arms" protected by the Second Amendment.

Alsenat pleaded guilty. He stipulated that the government would have been able to prove that he knowingly sold three machinegun conversion devices to an undercover law enforcement officer. The district court sentenced him to 24 months of imprisonment and three years of supervised release.

24-14058                Opinion of the Court                3

## II. STANDARD OF REVIEW

We review the constitutionality of a statute that defines a criminal offense *de novo*. *United States v. Gruezo*, 66 F.4th 1284, 1292 (11th Cir. 2023).

## III. DISCUSSION

In *Class v. United States*, the Supreme Court held that "a guilty plea by itself" does not "bar[] a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal." 138 S. Ct. 798, 803 (2018). A guilty plea does not waive a challenge that "can be resolved by examining the face of the indictment or the record at the time of the plea without requiring further proceedings." *United States v. Saac*, 632 F.3d 1203, 1208 (11th Cir. 2011) (citation and internal quotation marks omitted). Alsenat argues that section 922(o) is unconstitutional as applied to "adult citizen[s] who ha[ve] no felony convictions." Because Alsenat's challenge does not contradict his indictment or his factual proffer, we may consider it.

The Supreme Court in *District of Columbia v. Heller* made clear that the Second Amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." 554 U.S. 570, 625 (2008). It surveyed a host of ancient sources and concluded that such a "limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* at 627 (first citing 4 WILLIAM BLACKSTONE, COMMENTARIES *148–49 (1769); then citing 3 BIRD WILSON, WORKS OF THE HONOURABLE JAMES WILSON 79 (Phila.,

Bronson & Chauncey 1804); then citing JOHN A. DUNLAP, THE NEW-YORK JUSTICE 8 (N.Y.C., Isaac Riley 1815); then citing CHARLES HUMPHREYS, COMPENDIUM OF THE COMMON LAW IN FORCE IN KENTUCKY 482 (Lexington, William Gibbes Hunt 1822); then citing 1 WILLIAM OLDNALL RUSSELL, A TREATISE ON CRIMES AND INDICTABLE MISDEMEANORS 271–72 (Phila., P.H. Nicklin & T. Johnson, Bos., Lilly & Wait 1831); then citing HENRY J. STEPHEN, SUMMARY OF THE CRIMINAL LAW 48 (Phila., John S. Littell 1840); then citing ELLIS LEWIS, AN ABRIDGMENT OF THE CRIMINAL LAW OF THE UNITED STATES 64 (Phila., Thomas, Cowperthwait & Co. 1847); and then citing FRANCIS WHARTON, A TREATISE ON THE CRIMINAL LAW OF THE UNITED STATES 726 (2d ed. Phila., James Kay, Jun. and Brother 1852)).

In *Heller*, the Court also grounded the constitutionality of banning the possession of machineguns in this historical understanding. The Court stated that it would be "startling" to conclude that federal "restrictions on machineguns . . . might be unconstitutional." *Id.* at 624. And it reiterated that "weapons that are most useful in military service—M-16 rifles and the like—may be banned." *Id.* at 627.

The Supreme Court has made clear, in other contexts, that machineguns are not weapons in common use for lawful purposes. *See Staples v. United States*, 511 U.S. 600, 611–12 (1994) ("[C]ertain categories of guns—no doubt including the machineguns . . . that Congress has subjected to regulation—[are] items the ownership of which would have the same *quasi-suspect character* we attributed

to owning hand grenades in [*United States v. Freed*, 401 U.S. 601 (1971)]." (emphasis added)); *Haynes v. United States*, 390 U.S. 85, 87 (1968) (stating that Congress intended the National Firearms Act's tax on machineguns and other weapons to affect "only weapons used principally by persons *engaged in unlawful activities*" (emphasis added)). Unlike handguns, "the most popular weapon" for "the core lawful purpose of self-defense," *Heller*, 554 U.S. at 629–30, the ability of machineguns to fire automatically is best suited for criminal purposes, *see United States v. O'Brien*, 560 U.S. 218, 230 (2010) (acknowledging the "immense danger posed by machineguns" and "the moral depravity in choosing the weapon").

Handheld machineguns like the Tommy gun entered the civilian market after World War I and were quickly adopted by criminals. JOHN ELLIS, THE SOCIAL HISTORY OF THE MACHINE GUN 149–60 (1986); Robert J. Spitzer, *Understanding Gun Law History after Bruen: Moving Forward by Looking Back*, 51 FORDHAM URB. L.J. 57, 61–64 (2023). At least 32 states responded by enacting anti-machinegun laws between 1925 and 1934. Spitzer, *supra*, at 64. Many of those laws banned the possession of machineguns. *See, e.g.*, Act of May 16, 1927, ch. 552, § 1, 1927 Cal. Stat. 938 (making it illegal to "possess[] any firearm of the kind commonly known as a machine gun"); Act of July 7, 1932, No. 80, § 2, 1932 La. Acts 357 (making it "unlawful . . . to sell, keep or offer for sale, loan or give away, purchase, possess, carry or transport any machine gun"); Act of Mar. 6, 1933, ch. 64, § 1, 1933 Wash. Sess. Laws 335 (making it "unlawful . . . to manufacture, own, buy, sell, loan, furnish, transport, or have in possession, or under control, any machine gun"). In

1934, Congress enacted the National Firearms Act, which imposed a $200 tax on machineguns and required their registration with the federal government. Pub. L. No. 73-474, §§ 3–5, 48 Stat. 1236, 1237 (codified as amended at 26 U.S.C. §§ 5811, 5821, 5841). And in 1986, Congress enacted section 922(o) as part of the Firearm Owners' Protection Act. Pub. L. No. 99-308, § 102, 100 Stat. 449, 453 (1986).

More than 35 jurisdictions "strictly regulate" machinegun possession today. *See United States v. Morgan*, 150 F.4th 1339, 1348 (10th Cir.) (counting 38 such jurisdictions), *cert. denied*, 146 S. Ct. 907 (2025). At least 13 states and the District of Columbia ban all or almost all machinegun possession. *See* CAL. PENAL CODE §§ 32625(a), 32610, 32650; COLO. REV. STAT. § 18-12-102(1), (3); DEL. CODE ANN. tit. 11, § 1444(a)(5), (b)(1); D.C. CODE § 22-4514(a); HAW. REV. STAT. §§ 134-8(a), 134-11; 720 ILL. COMP. STAT. 5/24-1(a)(7)(i), 5/24-2(c); IOWA CODE §§ 724.1(a), 724.3, 724.2; MASS. GEN. LAWS ch. 140, § 131(f), ch. 269, § 10(c); MINN. STAT. § 609.67; N.J. STAT. ANN. §§ 2C:39-5(a), 2C:39-6, 2C:58-5; N.Y. PENAL LAW §§ 265.02, 265.20; 11 R.I. GEN. LAWS §§ 11-47-8(a), 11-47-9(a), 11-47-9.1; WASH. REV. CODE § 9.41.190(1)(a), (3); WIS. STAT. § 941.26(1g)(a), (3). And at least another 21 states ban private machineguns unless the weapon is legal under federal law. *See* ALASKA STAT. § 11.61.200(a)(3), (c), (h)(1)(C); ARIZ. REV. STAT. §§ 13-3101(A)(8)(a)(iii), (B), 13-3102(A)(3); FLA. STAT. § 790.221(1), (3); GA. CODE ANN. §§ 16-11-122, 16-11-124(4); IND. CODE §§ 35-47-5-8, 35-47-5-10(7); KAN. STAT. ANN. § 21-6301(a)(5), (h); LA. STAT. ANN. § 40:1752(A), (B)(3); ME. STAT. tit. 17-A, §§ 1051(1), 1052; MICH. COMP. LAWS §§ 750.224(1)(a), (3)(c); MO. REV. STAT.

24-14058          Opinion of the Court          7

§ 571.020(1)(6)(a); NEB. REV. STAT. § 28-1203; NEV. REV. STAT. § 202.350(1)(b), (6); N.C. GEN. STAT. § 14-409(b); N.D. CENT. CODE § 62.1-05-01(1); OHIO REV. CODE ANN. §§ 2923.11(K)(1), 2923.17(A), (C)(5); OR. REV. STAT. § 166.272(1), (3); 18 PA. CONS. STAT. § 908(a)–(c); S.C. CODE ANN. §§ 16-23-230, 16-23-250; TENN. CODE ANN. § 39-17-1302(a)(3), (d); TEX. PENAL CODE ANN. § 46.05(a)(1)(B); W. VA. CODE § 61-7-9.

Nothing in *Bruen* or *Rahimi* altered how *Heller* described the scope of the Second Amendment. *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2128 (2022) (citing *Heller* for the proposition that the Second Amendment only "protects the possession and use of weapons that are in common use at the time" and not those that are "dangerous and unusual" (citation and internal quotation marks omitted)); *United States v. Rahimi*, 144 S. Ct. 1889, 1897 (2024) (explaining that the Second Amendment right is subject to limitations such as "ban[s] [on] the carrying of dangerous and unusual weapons" (citation and internal quotation marks omitted)). So we join several sister circuits in holding that the Second Amendment does not protect the possession of machineguns. *See Morgan*, 150 F.4th at 1345–51; *United States v. Simmons*, 143 F.4th 200, 207 (4th Cir. 2025); *United States v. Bridges*, 150 F.4th 517, 522–29 (6th Cir. 2025); *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 141–43 (3d Cir. 2016); *United States v. Henry*, 688 F.3d 637, 639–40 (9th Cir. 2012); *United States v. Fincher*, 538 F.3d 868, 873–74 (8th Cir. 2008); *see also Capen v. Campbell*, 134 F.4th 660, 672 (1st Cir. 2025); *United States v. Rush*, 130 F.4th 633, 637 (7th Cir. 2025); *Hanson v.*

*District of Columbia*, 120 F.4th 223, 239 (D.C. Cir. 2024), *cert. denied*, 145 S. Ct. 2778 (2025).

Alsenat's status as a non-felon citizen does not alter our conclusion. Alsenat's claim is "quasi-facial" in that he "contends that [section 922(o)] cannot be constitutionally applied to a defined subset of people the law covers," including him. *McGuire v. Marshall*, 50 F.4th 986, 1003 (11th Cir. 2022) (citation and internal quotation marks omitted). He "must therefore satisfy our standards for a facial challenge to the extent" his claim "reach[es] beyond the particular circumstances" of his appeal. *Doe v. Reed*, 561 U.S. 186, 194 (2010). A facial challenge requires Alsenat to "establish that no set of circumstances exists under which" section 922(o) is constitutional. *Rahimi*, 144 S. Ct. at 1898 (citation and internal quotation marks omitted). Because section 922(o) is constitutional as applied to Alsenat, his quasi-facial challenge fails.

## IV. CONCLUSION

We **AFFIRM** Alsenat's conviction.